Argued September 14, reversed November 28, application for supplemental opinion denied December 27, 1916.
Rehearing denied February 13, 1917.

## FARRELL *v.* DAVIS.*

### (161 Pac. 94, 713.)

**Corporations—Issue of Stock—Statute—"Actual Fraud"—"Property."**

1. Under Section 6696, L. O. L., providing that in the absence of actual fraud the judgment of the directors of a corporation as to the value of property for which they issue stock shall be conclusive, "actual or positive fraud" consisting in circumventing, cheating or deceiving a person, to his injury, by any cunning, deception, or artifice, and a contract right being a chose in action, and therefore "property," where directors issued stock for an exclusive right to market the products of another corporation for a term of years, which all concerned believed to be a valuable contract, the fact that the contract turned out to be of little or no value, not being sufficient to show fraud on the part of the directors, their judgment will not be revised, or a subsequent purchaser of the stock be held liable as for unpaid subscriptions.

[As to liability of directors of corporation for misrepresenting its solvency, see note in 8 **Am. St. Rep.** 604.]

**Corporations—Stock Issued at Overvaluation—Right of Creditor.**

2. As a general rule, a corporate creditor cannot complain where, at the time he contracted with the company, he knew the stock had been issued for property taken at an overvaluation.

### APPLICATION FOR SUPPLEMENTAL OPINION.

**Appeal and Error—Question for Review.**

3. On appeal in suit to recover unpaid stock subscriptions, wherein defendant pleaded a decree of the Circuit Court allowing his claim against the insolvent corporation, where the decree of the circuit judge in the suit modifying and disregarding the findings of the circuit judge allowing the claim will be reversed and the suit dismissed, as prayed in defendant's answer, it is unnecessary to pass on defendant's claim against the corporation.

---

*For authorities on the question of effect of creditor's knowledge that stock was improperly issued on overvaluation of property, or improperly issued as paid up, see note in 8 **L. R. A.** (N. S.) 271.

REPORTER.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.   Statement by MR. JUSTICE BEAN.

This suit is brought by W. E. Farrell, as assignee of the Hygienic Mattress Company, against A. E. Davis, H. H. McCarthy, R. E. Norton, G. A. Emery and S. B. Hendee, to recover from them as stockholders in the insolvent Mattress Company for alleged unpaid stock subscriptions.   From a decree against defendant A. E. Davis for the sum of $8,945.88, he appeals.

It is alleged in the complaint that defendants H. H. McCarthy and R. E. Norton are not within the jurisdiction of the courts of Oregon.   The suit was dismissed as to G. A. Emery as not commenced within the time limited by the Code.   Plaintiff avers that the issuance of $40,000 of the capital stock of the insolvent corporation to H. H. McCarthy, R. E. Norton and G. A. Emery was without consideration in that no money nor anything else of value ever passed into the treasury of the bankrupt company therefor, and that the present and past holders of this stock should be required to pay to the assignee sufficient money to satisfy the debts of the corporation.   The Oregon Pine Needle Fibre Company, a corporation, obtained a patented machine for the manufacture of pine needles into fibre for mattresses.   On October 12, 1904, having recently constructed a building in Union County, Oregon, to be used for such manufacturing purposes, it contemplated the installation of additional machinery to be used in the business, which was somewhat in its infancy, and in order to pave the way to interest capital in the enterprise to a sufficient extent to better insure the success of the undertaking, entered into a contract with Dr. M. W. Bruner and H. H. McCarthy according to the terms of which the latter men agreed to buy and were

given the exclusive right to market the products of the Fibre Company outside of a local radius of 100 miles for the term of five years from that date with the privilege of extending the contract for an additional five years if desired by the purchasers. The contract net price agreed to be paid for the fibre was ten cents a pound, and $4 a pound; apothecary's weight, for all pine-needle oil. The price of the insect powder was to be decided upon thereafter. These prices were to be for goods delivered at Chicago or St. Louis and at all points in the United States west thereof, the fibre to be delivered in car lots of a minimum weight of 20,000 pounds, and the freight to be paid by Bruner and McCarthy and deducted from the purchase price. It was mutually agreed that in case the Pine Needle Company should build other factories for the manufacture of pine-needle products during the continuance of the contract the other parties should have the option of taking the entire product under the same terms. In December, 1904, the Hygienic Mattress Company was organized for the sole purpose of taking over this contract from the individuals then interested in it, and manufacturing and marketing the products of the Fibre Company. The Mattress Company was organized with 500 shares of stock each having a par value of $100. Mr. A. E. Davis, the defendant-appellant, took 100 shares for which he paid $10,000 in cash. Ninety-eight of these shares were issued to Davis and one each to A. E. Gebhardt and J. C. Flanders for the purpose of qualifying them as directors of the Mattress Company. The other 400 shares were issued to the defendants McCarthy, Emery and Norton in exchange for their rights under the contract with the Oregon Pine Needle Fibre Company. This latter company ratified the transfer to the Hygienic Mattress Company and agreed

to accept this corporation as a substitute for the individuals on the contract. Davis, McCarthy, Norton, Gebhardt and Flanders were elected directors of the Mattress Company. Davis was elected president and manager at a salary of $500 a month and resigned his position in the Portland Flouring Mills, where he was next to the head of the concern, to engage in the pine-needle fibre business. McCarthy was chosen vice-president, and Norton, secretary. An assessment of 100 per cent was levied upon the stock subscriptions and an agreement made by which McCarthy's shares for $10,000, and those of Norton for $20,000 were declared to be fully paid by the transfer of the contract. Subsequently Davis purchased the 100 shares of stock held by Norton for which he paid $10,000 in cash. These 200 shares for which he paid $20,000 cash were Davis' entire personal holdings, but for voting purposes only and as a protection to him he was assigned 51 shares of the 100 owned by McCarthy. The latter assigned to him a block of stock in the Oregon Pine Needle Fibre Company and Davis attended its annual meeting and asked the Fibre Company to take the Mattress Company as party of the second part in the contract of October 12, 1904, instead of Bruner and McCarthy. The Mattress Company continued in business about sixteen months and manufactured a good mattress. In April, 1906, it made an assignment for the benefit of creditors under the state law. On July 9, 1906, the plaintiff was appointed assignee for creditors. Mr. Davis put in a claim of $6,116.40 to the assignee for salary and disbursements made in behalf of the corporation, which was contested by the other creditors and disallowed by the assignee. After a full hearing upon all the evidence it was held by Judge CLELAND of the Circuit Court that Mr. Davis

was entitled to this amount. It appears that this finding was ignored in the present case. The defendant Davis has interposed a plea of *res adjudicata* and has set off a claim for salary against the Mattress Company the amount of which claim is disputed.

REVERSED AND SUIT DISMISSED.

For appellants there was a brief over the names of *Messrs. Wood, Montague & Hunt* and *Mr. Prescott W. Cookingham,* with oral arguments by *Mr. Charles E. S. Wood* and *Mr. Cookingham.*

For respondent there was a brief with oral arguments by *Mr. Turner Oliver* and *Mr. Frank S. Grant.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. This suit was instituted in 1908. The theory of the complaint is that the $40,000 worth of stock issued in exchange for the contract with the Fibre Company was entirely without consideration, for the reason that the contract was not property within the meaning of Section 6696, L. O. L. The suit is defended upon the theory that the stock subscribed was fully paid up by the assignment in good faith to the Mattress Company of a valuable contract right which would be considered as property under the section of the statute referred to which provides as follows:

"All sales of stock, whether voluntary or otherwise, transfer to the purchaser all rights of the original holder or person from whom the same is purchased, and subject such purchaser to the payment of any unpaid balance due, or to become due, on such stock; but if the sale be voluntary, the seller is still liable to existing creditors for the amount of such balance, unless the same be duly paid by such purchaser; provided, that any corporation formed under the laws of this state may purchase real or personal property, includ-

ing the stock of any other corporation, and issue stock to the amount of the value thereof in payment therefor, and the stock so issued shall be fully paid stock and not liable to any assessment; and in the absence of actual fraud in the transaction, the judgment of the directors as to the value of the property purchased shall be conclusive; and in all statements or reports of the corporation to be published or filed, stock so issued shall not be stated or reported as being issued for cash paid to the corporation, but shall be reported in this respect according to the fact.''

All that part of the section commencing with the word ''provided'' was added thereto by an amendment in 1903. If there was no actual fraud in the transaction of issuing the stock for the contract we are precluded by the legislative mandate from questioning the judgment of the directors of the Mattress Company as to the value of the contract. The evidence shows that the machine for the manufacturing of fibre from pine needles was patented by a man at Grants Pass, Oregon, and that the Oregon Pine Needle Fibre Company had obtained the patent right. There appears to have been but little, if any, question in the minds of all the interested parties at the time but that the manufacturing of the fibre by the Fibre Company and the manufacturing and sale of mattresses by the Mattress Company would be a very profitable business and that the obtainment of the ten years' contract of the fibre plants was a very valuable right. McCarthy was vice-president of the Fibre Company and in connection with Bruner was apparently armed with this chose in action in order to interest other capitalists in the manufacturing of mattresses and thereby make a demand and sale of the output of their factory. About November 5, 1904, Davis was presented with a prospectus showing a detailed statement of the estimated cost of operating and

the profits of the Oregon Pine Needle Fibre Company's plant for a run of ten months taking the prices named in the contract as a basis and leaving a net balance of profit of $91,597.40. Emphasis was placed upon the fact that "this is the only pine-needle fibre machine in the world and the only process in operation" and covered by a patent. For the company to be organized for manufacturing the fibre into mattresses and selling the products, oil, etc., an estimate was made of the cost and selling price for the same length of time, and after deducting all expenses a net profit was estimated at $140,400. All appear to have had confidence in the success of the venture, to have believed that the advantage of the contract would work out a good profit, and that it was valuable. There was no actual fraud on the part of the directors in estimating the value of the rights obtained under the contract. Defendant Davis proved his good faith in the transaction by putting $10,000 into the treasury of the Mattress Company for a one-fifth interest in the contract right. In order to do this he relinquished an established position with a well known, reliable concern to devote his entire time to promote the success of the enterprise, and later he paid $10,000 more for that amount of the capital stock of the Mattress Company.

Actual or positive fraud has been said to consist in circumventing, cheating, or deceiving a person to his injury, by any cunning, deception or artifice: 20 Cyc. 8. A contract right being a chose in action comes within the legal understanding of property: 32 Cyc. 654. Thus a contractual license to mine, revocable only by consent or condition broken, is property though coupled with an obligation to continue the work, and may be accepted by a corporation in payment of a subscription to its stock: *Shepard* v. *Drake,* 61 Mo. 134. See, also,

*Beyrich* v. *Liebler,* 3 N. Y. Supp. 293. The same principles govern the payment for stock by a contract right as control the analogous line of cases where stock is paid for by other intangible rights such as patent rights: *Rich* v. *Bank,* 7 Neb. 201.

It is said in 4 Thomp. Corp., Section 3953: " * * An agreement between the owner of a patent right and a third party that the latter should form a corporation to work the patent and should issue to the former a certain number of full paid shares of the capital stock of the corporation for the transfer of the patent right, there being no evidence of fraud or of a purpose to impose upon the public, has been held a valid agreement."

The fact that it subsequently turned out that this contract had little or no value is not of itself sufficient to show fraud on the part of the directors: *American Tube & Iron Co.* v. *Hayes* (Pa.), 30 Atl. 936; *Young* v. *Erie Iron Co.,* 65 Mich. 111, 122.

S. B. Hendee, a stockholder of the Oregon Pine Needle Fibre Company, appears to have assisted H. H. McCarthy in promoting the enterprise and everything seems to have been done in the interests of that company as well as the Mattress Company. On November 5, 1904, Hendee wrote Davis in part as follows:

"In presenting the within Manufacturing Enterprise, I would respectfully call your attention to the truthfulness of the statements that can be verified and indorsed by your family physician, also the point that the sale of every article assists in retaining as well as restoring to health the purchaser, besides providing the owners of mill and factory a handsome profit."

From all indications these corporations were closely allied and it is not easy to believe that the officers of the Pine Needle Company did not know all about the arrangement as to the issuance of the stock for the con-

tract.   In fact the circumstances show that they were aware of this.

2. The claims of the Pine Needle Company for fibre, etc., which have been assigned to an individual constitute the principal part of the indebtedness of the Mattress Company for which this suit is brought.   As a general rule, a corporate creditor cannot complain where, at the time when he contracted with the company, he knew that the stock had been issued for property taken at an overvaluation: 1 Cook on Corp., § 46, p. 203, citing *Bank of Fort Madison* v. *Alden,* 129 U. S. 372 (32 L. Ed. 725, 9 Sup. Ct. Rep. 332) ; *McDowell* v. *Lindsay,* 213 Pa. St. 591 (63 Atl. 130) ; *Bonet etc. Co.* v. *Central etc. Co.,* 153 Mo. App. 185 (132 S. W. 270) ; *Davis* v. *Ball,* 64 Wash. 292 (116 Pac. 833, Ann. Cas. 1914B, 750) ; *Johnson* v. *Tennessee Oil Co.,* 74 N. J. Eq. 32 (69 Atl. 788) ; *Bank* v. *American etc. Co.,* 69 N. J. Eq. 326 (60 Atl. 54) ; *Lea* v. *Iron etc. Co.,* 147 Ala. 421 (42 South. 415, 119 Am. St. Rep. 93, 8 L. R. A. (N. S.) 271).

The Oregon Pine Needle Fibre Company, being the father of the whole enterprise and instrumental in interesting Davis to the extent of paying $10,000 to the Mattress Company for stock, and afterwards $10,000 more to McCarthy, the vice-president of the Oregon Pine Needle Fibre Company for his stock in that company, is in a poor position to insist that Davis bear another large share of the burden or to assert that the contract executed by it and sent out into the market to raise funds for the enterprise in which that company was vitally interested was then of no value.   There is no actual fraud shown in the issuance of the stock afterwards purchased by Davis.   Under our statute the court cannot readjust the matter by revising the judgment of the directors of the Mattress Company in fixing the value of the then much prized monopoly contract for the

exclusive right to market the products of the Oregon Pine Needle Fibre Company's factories for the period of ten years.

The decree of the lower court will therefore be reversed and the suit dismissed.

REVERSED AND SUIT DISMISSED.

MR. JUSTICE MCBRIDE and MR. JUSTICE BENSON concur.

---

Denied December 27, 1916.    Rehearing denied February 13, 1917.

APPLICATION FOR SUPPLEMENTAL OPINION.

(161 Pac. 713.)

On application of appellant A. E. Davis for a supplemental opinion. Application denied. Petition for rehearing denied.

*Messrs. Wood, Montague, Hunt & Cookingham,* for the application.

*Mr. Turner Oliver* and *Mr. Frank S. Grant, contra.*

Department 2.    MR. JUSTICE BEAN delivered the opinion of the court.

3. Defendant A. E. Davis has applied for a supplemental opinion adjudicating his claim against the assignee of the estate of the Hygienic Mattress Company, an insolvent debtor. It is stated in the application that Mr. Davis filed a claim against the insolvent company for over $6,000, representing the disbursements made by him in behalf of the corporation and overdue salary; that after a full hearing on the merits Judge CLELAND of the Circuit Court allowed the claim in full and entered an order requiring the assignee to list it

for payment of dividends. In the present suit against Mr. Davis to recover for unpaid stock subscriptions he pleaded the decree of Judge CLELAND rendered April 6, 1908, allowing his claim in the sum of $6,535.42, together with the other defense which is referred to in the original opinion in this case filed November 28, 1916. Upon the hearing of the present suit in the Circuit Court, as the application recites, Judge MORROW made a finding that Mr. Davis was entitled to a salary of $150 a month for sixteen months, or a total of $2,400, hence modifying the findings of Judge CLELAND concerning the salary and disregarding the same. According to the original opinion herein the decree of Judge MORROW will be reversed and the suit dismissed as prayed for in defendants' answer. It therefore becomes unnecessary in this suit to pass upon the claim of Mr. Davis for salary. The proceedings in the matter of the assignment of the Hygienic Mattress Company were not made a record in the present suit either as an exhibit or otherwise. Neither was the claim of Mr. Davis filed as an exhibit and the record in regard thereto is very meager.

We are of the opinion that this application seeks for an expression in advance in regard to the settlement of a claim against the assignee estate which, as the application states, has already been passed upon by Judge CLELAND of the Circuit Court, and from which no appeal has been taken. If it were necessary to further adjudicate the matter in this suit the record is not sufficient for such an adjustment. There is no further question involved herein which this court can legally decide or upon which it can express an opinion.

The application will therefore be denied.

APPLICATION FOR SUPPLEMENTAL OPINION DENIED.

REHEARING DENIED.

MR. JUSTICE HARRIS and MR. JUSTICE BENSON concur.