NATIONAL LOAN BANK (HAMILTON v.). See Case No. 5,987.

NATIONAL MECHANICS' BANK (SHOEMAKER v.). See Case No. 12,801.

---

## Case No. 10,047.

### NATIONAL PARK BANK v. NICHOLS.

[2 Biss. 146;[1] 5 Am. Law T. Rep. 335; 1 Chi. Leg. News, 361; 5 Leg. Gaz. 341.]

Circuit Court, N. D. Illinois. May Term, 1869.

#### LIABILITY OF SHARE-HOLDERS.

1. It is the duty of a share-holder in a company to examine his certificate, and ascertain his actual position and liability.

2. Circumstances which make a share-holder liable for previously contracted debts, and effect of misrepresentations by agent.

3. Though a subscription be obtained by fraud, the stockholder may waive it by assuming its advantages.

4. If a share-holder assumes the benefits and advantages of a partner, he cannot, when called upon to respond for the contracts of the corporation, deny his liability.

This was an action at law [by the National Park Bank][2] to charge the defendants [Joshua R. Nichols, George S. Bowen, J. H. Bowen, C. T. Brown, A. Sturges, B. Sturges, G. Hubbard, G. Carpenter, A. T. Hall, F. C. Smith, A. B. Meeker, J. Y. Scammon, C. M. Smith, A. F. Faucet, G. P. Lee, S. J. Walker, J. V. Farwell, R. M. Hatfield, and H. Martin], nineteen in number, as partners in a joint stock company known as the Butterfield Overland Dispatch Company. The cause of action was an indebtedness of this company, accruing at various times in the year 1865. The company was organized in March, 1865, under the laws of New York relating to joint stock companies. It was conceded that the legal effect of such organization was to make the associates co-partners. In July, 1865, an agent of the company made application to the defendants to take stock, stating that the company was organized for the transportation of material across the Western plains under a charter that would exempt the subscribers from personal liability, and that its capital stock was to be $3,000,000, one-half of which was to be paid in cash. The defendants engaged to take stock amounting in the aggregate to $250,000, and paid to the agents of the company fifty per cent. of the

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

2 [From 1 Chi. Leg. News, 361.]

sum subscribed. In September, certificates of stock were forwarded to the agent of the company in Chicago, and delivered to the defendants. These certificates referred to the articles of association in general terms, and, it was claimed by the plaintiff, were sufficient to put the defendants upon inquiry as to the mode of organization of the company. On the other hand, it was claimed by the defendants that, supposing that the certificates were in pursuance of the contract of subscription, they did not, in fact, examine them.

It appeared that on November 3d, 1865, all the defendants except Nichols, whose letters were relied on as equivalent, executed a power of attorney, as associates, authorizing the organization of the Butterfield Overland Dispatch Company into a corporation, under the laws of Kansas. It was, however, insisted by the defendants that at this time they supposed the company was organized as a corporation.

[It was in evidence, also, that][2] in the spring of 1866, the company failed, owing very large sums of money, and transferred its assets to the Holliday Overland Mail and Express company, and issued circulars to its stockholders announcing that they were legally liable to pay in full, as partners, the debts of the concern, calling an assessment of thirty-three and one-third per cent. on the subscriptions, and giving to the subscribers the alternative of taking stock in the Holliday Overland Mail and Express Company, or paying the assessment. All the defendants except Walker, Faucet, Scammon and Martin subscribed and paid for stock in the Holliday Overland Mail and Express Company, under this circular. All the defendants claimed that they had no knowledge, in fact, of the mode of organization, or that there existed a danger of personal liability, until the receipt of this circular [in the spring of 1866. An assessment was afterwards laid of forty per cent., which all the defendants][2] declined to pay.

It was claimed by the defendants: 1st. That they were induced to subscribe by fraudulent representations. 2d. That their subscription was, in any event, upon condition that the company should be organized under a charter, and with a fixed cash capital. 3d. That they could not be made liable by relation upon contracts made or debts accruing prior to their coming into the association.

On the part of the plaintiff it was insisted that if there was fraud in procuring the subscriptions, or if conditions were attached to them, yet,—1st. The fraud or condition had been waived. 2d. That the defendants, by their acts, were estopped from setting up such fraud or breach of conditions. 3d. That the defendants, in legal effect, became partners by relation to the date of the articles of association.

The facts relied upon as a waiver or estoppel were: 1st. The receipt and retention by the defendants of the certificates with their recitals. 2d. The execution of the power of attorney, with its recitals authorizing the organization of the company under the laws of Kansas. 3d. The receipt of the stock of the Holliday Overland Mail and Express Company. 4th. Various letters from several of the defendants, which, it was claimed, admitted their membership.

S. A. Goodwin and I. N. Arnold, for plaintiff.

Charles Hitchcock, Wirt Dexter, Corydon Beckwith, and Geo. C. Bates, for defendants.

DRUMMOND, District Judge (charging jury). This is an action by the National Park Bank of the city of New York, against the defendants, as partners in a joint stock company called the Butterfield Overland Dispatch Company; and the question is, whether as such partners they are liable for the claim of the plaintiff, consisting of moneys advanced to that company during the year 1865. The advances commenced on the 21st of April, and ended in November. It depends upon the fact whether these defendants were members of that company in such a way as to make them liable as partners of the company for the whole or for any part of these advances.

You will remark, that the plaintiff was not a party to many of the transactions which have passed in review before us in the evidence; that has related chiefly to the connection of the defendants with this company, and the manner in which they were induced to give it their names and money. With that it does not appear that the plaintiff as a corporation had anything to do. That was an act, apparently, of some of the members of the company called the Butterfield Overland Dispatch Company, and as between them and these defendants it must be admitted that there have been faults on both sides.

The leading fault with those in New York connected with the Butterfield Overland Dispatch Company, and one which cannot be excused, was the concealment of the fact that they, on the 20th day of March, 1865, commenced the formation of this joint stock company, and completed it by signing and acknowledging the articles of association, on the 12th day of April, 1865, containing stipulations by which they were bound, and by which it appeared it was an association under the sanction of the laws of New York.

Now it was the duty of all these men, or of any of them, in seeking for associates, to let them know distinctly what had been done, and what was the compact to be entered into by any one who was to become a party to the association called the Butterfield Overland Dispatch Company; and if they sought subscribers to their articles of association in

2 [From 1 Chi. Leg. News, 361.]

Chicago, it was their duty to make known to these subscribers what their articles of association were. The primary thing to be established was their connection with the association; it was, therefore, indispensable that all who were to be connected with it should know its nature and character. But the various gentlemen who approached these defendants upon the subject of becoming parties to this company, did not communicate to any one of them, so far as we know, that there were articles of association signed, and which became operative by their terms, and which recognized that they were entered into with relation to the laws of New York. These gentlemen, so far as the evidence shows, were Mr. Nichols, Mr. Sturges, and Mr. Butterfield. I believe that no intimation was given by any of them that articles of association had already been subscribed, constituting the Butterfield Overland Dispatch Company. On the contrary, the propositions made were entirely inconsistent with this leading fact. If we believe the declaration of the defendants (and they have not been affected by any statements, so far as I know, introduced on the part of the plaintiff), the motives held out to them to induce them to become parties to such an association, were entirely different from those the actual state of facts would warrant.

Here was a company already organized, the parties to which were personally responsible for the debts of the concern, which may have been very large at the time. Of course, the action of the defendants under such a state of facts, if they had been communicated to them, might have been entirely different from what it was.

The first question, therefore, is, whether defendants became parties to this association, as partners, with a knowledge of the circumstances of its existence at the time, and with good faith exercised to them by those who induced them to become parties. If they did, of course they are bound by the position of affairs at the time. But this is not claimed, as I understand, by the plaintiff, for if the testimony which has been given by the defendants can be relied upon, the contract entered into and the money that was paid by these defendants was upon an entirely different supposition from that justified by the actual state of affairs. And, therefore, I think, if this testimony can be relied upon (of course you are to judge of the testimony), there can be no original liability on the part of these defendants on the ground of their knowledge of the condition of the Butterfield Overland Dispatch Company at the time that they became parties; and it is certainly a significant fact that Mr. William Sturges, who was the main instrument and agent by which these defendants were induced to subscribe and pay their money, has not been called by the plaintiff to affect in any degree the testimony of the defendants.

If, however, they were not parties in consequence of not understanding the position of affairs, misrepresentations being made to them of facts, it does not follow that they may not have become parties by subsequent acts of their own, with knowledge of the facts. And the next question is, have they so become parties? In order to determine this, you are to take the facts that are applicable to all the defendants, not those applicable to one or more of the defendants less than the whole; because if you find the defendants liable at all, you have to find them all liable, and you have only to apply the facts which have been proved as to all. If there have been facts proved as to some, not as to others, you have only to take those which apply to all, and determine whether they convince you whether the defendants have become parties to the articles of association.

The defendants were applied to, I think most of them, and subscribed and advanced their money in the summer of 1865. As I have already said, if we believe their testimony, they did not know at that time that the company had been organized under the laws of New York, and that there were large liabilities against the company which they might be called upon to assume. Have they done so since by any acts of their own? Have they become liable as partners?

In August, or in the early part of the fall of 1865, certificates of stock were made out and forwarded by the officers of the Butterfield Overland Dispatch Company to the subscribers and stockholders here, and they were received, as I understand, by the defendants. These certificates of stock (most of them) have been introduced, and it is admitted that they are all similar in character. Now, the certificate of stock which each of the defendants received, bore on its face that the holder was entitled to a certain number of shares of stock in the Butterfield Overland Dispatch Company, and also that the holder was subject in the future to the payment of such assessments as might be made in case of loss or other necessity, and to all the obligations and liabilities of the company, and also entitled to all the privileges of a member as fully as if he had signed the articles of association.

We have spoken of the faults of the gentlemen of New York; we must now refer to what must be considered a fault of the defendants.

Many of the defendants say that they received the certificates of stock without examining them. They certainly knew what they were. They purported to represent their interests in a company or organization, for which they had subscribed or paid their money. It is presumable, I think, that if the company had earned profits they would have claimed the profits under this evidence of their interest in the company.

It certainly was, therefore, their duty to examine the document which they had received, indicating the interest they had in

the company and the money they had paid. It may be true that men do not always examine certificates of stock, and yet there never has been known, I believe, an instance of a man who became a member, in this way, of a company, who, if the company realized profits, did not claim them by virtue of such certificate. Then, that being so, there would be a natural inference that, claiming the advantages and profits, he must bear the burdens and losses. But the only effect of this, in this case, is as to the conclusion to be drawn against the defendants by the circumstance that the certificates contained certain language that they were shareholders in the Butterfield Overland Dispatch Company, and that they were subject to the payment of assessments for losses or from other necessity, and entitled to all the privileges of the association as if they had actually signed the articles.

Now, if these had been given to the defendants, without any previous representation having been made, the effect of this might have been stronger than it was under the conceded state of facts. Because it is quite possible that those who did look at the certificates of stock might have regarded them under the influence of the representations which had been made by the agents who applied to them for subscriptions and for their money, and therefore they might not draw the same inference or conclusions from them that they would, had they been uninfluenced by such representations; and all that I can say to you, if you believe this testimony, is simply this: that if he examined these certificates of stock, it would seem to have been the duty of every stockholder to make some inquiry as to his relation with this Butterfield Overland Dispatch Company; to know, in other words, where he stood, what his responsibilities were as a member of the company, and if, in point of fact, he found himself in a different position from what he supposed he was from the representations that were made, to repudiate that connection, to disavow it at once, and have nothing more to do with it. That nothing of this kind was done was, I think, a fault on the part of some of the defendants, and, I must say, one not very creditable to their character as business men. But I cannot say that you can disregard, in connection with this aspect of the case, the bearing and effect of the representations that were made as inducements to them to become parties to the company. Because it is indispensable, I think, in order to make out a liability against these defendants, that they should be possessed of full knowledge of the circumstances of their connection with the company which was then organized; and if they accepted this stock with this full knowledge of the circumstances, then they were bound, as prudent and discreet business men, to follow up the intimation given in this certificate of stock, and to ascertain the position in which

they stood, and are to be visited with all the consequences of partners in this association, but not otherwise.

Again, if they did become members of this association with the full knowledge of the circumstances connected with the position of the Butterfield Overland Dispatch Company, what is the measure, under the facts of the case, of their liability to this plaintiff? That is another and distinct question.

It is conceded that no one of these defendants was a member of the association at the time the contract was made between the company—the Dispatch Company—and the plaintiff for a loan of the money, on the 21st of April, 1865, by which it was agreed that the plaintiff should advance to the company $100,000, in sums as they might be wanted; and, in fact, on that day $10,000 were advanced, and on the 1st of May $55,000, and the 2d of May $20,000, and on the 3d of June $5,000—$90,000, advanced before, as I understand, any of these defendants became connected with this company.

Now, to say nothing of the $20,000 advanced in November, are these defendants responsible for the money which was advanced before they became connected with the company? Of course the only ground upon which they are liable is, that they associated themselves with the company, either by express declaration or by acts which admit of no reasonable doubt that they assumed, as members of the company, all the liabilities of the company at that time. It is only in that way, by relation back of the position of the company at the time they connected themselves with it, if they ever did, that they could become liable for the $90,000 advanced to the company before that connection. Of course, if with full knowledge of the facts they did become parties, either expressly or by implication, to this joint stock company, from the beginning, they are as responsible for the debts of the company as those who were original parties to articles of association, but not otherwise. They must have become parties with full knowledge of the facts, understanding their position and relations to the company.

As to the $20,000 advanced on the 15th of November, that would depend, of course, first, upon the fact whether they were partners, and secondly, whether, as such partners, they reaped the benefit of the advance that was made, and enjoyed its fruit. If they did, then I think they are estopped from asserting they are not liable. If they, at the time the $20,000 were advanced, were partners of the association, and had as such the full benefit of the advance, they would be liable equally with their associates for the advance. You will see, therefore, there are three questions which the court submits to you.

In the first place, whether these defendants became subscribers, and advanced their money to the company with full knowledge of the circumstances of its existence at the time,

anu witn the exercise of good faith, and true statements and representations made to them by the agents of the company when they subscribed their names and advanced their money. If you shall believe they did not become partners by that act, by anything that was done, then the next question the court submits to you is whether with full knowledge of the facts they have become partners since. It may be true that bad faith was used towards them at the time their subscriptions and money were obtained. It may be true that fraud was practiced; but it was competent for them, with knowledge of all the facts, to waive the fraud, and if they did —if they assumed the advantages of members and partners of the association—they cannot, when they are called upon to respond for the contracts of the association, be heard to deny their liability.

Thirdly, if they were partners and members of the association, what is the measure of their liability, and whether for the whole or only a part of the advance made by the plaintiff? It is to be observed that this is not an action by the Overland Dispatch Company against these defendants for assessments made against them, as shareholders, by the company. It is not a bill in equity calling upon the defendants to respond to the creditors of the company for advances which have been made; but it is an action at law against these defendants, as members of the association—partners—liable as partners for the debts of the company, and their liability must be measured by the rules which are applicable to a partnership concern, under which one member of a firm is liable for the debts of the firm; and in this aspect of the case, of course, the whole question turns upon the fact whether they were partners and members of the company.

2 [A great deal of evidence has been introduced which really has but an insignificant bearing upon the case, viz. as to the conduct of these New York men in keeping their books, selling out to Ben. Holliday, to Brown, etc. All these are material upon this aspect of the case, viz. whether good faith was used by those persons who solicited the defendants to become parties, in the act of making them parties. But inasmuch as that is not seriously relied upon by the plaintiff in the argument which has been made, of course that testimony does not become material.

[I consider that the important testimony bearing upon the case is the subsequent acts of these defendants, by which it is claimed that they were connected with this company. If you shall find, gentlemen, under the facts and law, as it has been now stated to you by the court, that the defendants are liable for the advances that were made, it is for you to say whether, under the law and under the facts, they are liable for the whole; and if they are, then the plaintiff would be entitled

2 [From 1 Chi. Leg. News, 361.]

to the whole amount advanced, with interest from the time that this money should have been returned under the contract, or, in the absence of any proof upon the subject, from the time the suit was commenced. If you shall find that they were only liable for a part, then you will allow such part, together with interest in the same way. If you find under the facts and under the law that the defendants are not liable at all, then, of course, you must simply say that you find for the defendants.

[I repeat what I said before, that you must apply the evidence only which bears upon all and against all the defendants. You cannot select out that evidence which applies only to some of the defendants, less than all; but you must take the evidence which applies to all, and by this I only mean that the proof must convince you of the liability of all. Because, if you find for the plaintiff, you must find against all or none of the defendants. This is the conceded rule of law in this form of action. I understand that there has been a recent statute of the legislature of this state which has changed this principle of the common law, but it has not yet been adopted by this court, and, of course, is not at present a law of this court.] 2

[For proceedings on a motion to dismiss for want of jurisdiction, see Case No. 10,048.] For a further discussion of the liabilities of stockholders, consult Upton v. Hansbrough [Case No. 16,801] and Same v. Burnham, January, 1873 [Cases Nos. 16,798 and 16,799], and cases there cited.