Argued October 1, affirmed December 9, 1924.

# HAROLD SMITH ET AL. *v.* ALFRED SCHMITT ET AL.

### (231 Pac. 176.)

**Corporations—When Judgments Forming Basis of Suit by Corporate Creditors Against Stockholders Conclusive, Stated.**

1. In judgment creditors' suit for unpaid subscriptions, the judgments under which plaintiffs claimed were conclusive in absence of fraud, trial court having jurisdiction of parties and subject matter of suits wherein rendered.

**Corporations—Transfer by Promoters Acting as Directors of Options on Land to Corporation to Pay for Stock Issued Held Fraud as to Creditors.**

2. Where promoters of corporation, acting as directors thereof, transferred to it options on land, which were of small value, to pay for stock issued to them, transaction was fraud as to corporation and its subsequent creditors, regardless of Section 6872, Or. L., relating to conclusiveness of judgment of directors as to value of property, in absence of actual fraud in such transactions.

**Corporations—Property Transferred to Corporation not to be Considered as Overvalued Because It Subsequently Turns Out to be so.**

3. Under Section 6872, Or. L., making judgment of directors of corporation as to value of property purchased conclusive in absence of actual fraud, property should not be considered as overvalued merely because it subsequently turns out to be so.

**Corporations—Allegation of Fraud of Directors of Corporation in Issuing Stock to Themselves Held Sufficient.**

4. In suit by creditors of corporation to hold stockholders liable for unpaid subscriptions, allegations that directors, who were promoters of corporation, sold options on land to corporation, and as directors accepted them in payment for subscriptions by them, was sufficient to allege fraud of directors in issuing stock to themselves.

**Corporations—Stock Paid for by Transfer of Valueless Options Held "Watered Stock."**

5. Where promoters of corporation, who were also directors thereof, transferred options on land which were practically valueless, and as directors accepted them on part of corporation to pay their subscriptions, such stock, although issued as paid-up stock, was in effect "watered stock."

---

1. See 7 R. C. L. 420.

Corporations—Individual Stockholder of Private Corporation Liable for Its Indebtedness to Amount of Unpaid Stock Subscription.

6. Under Constitution, Article XI, Section 3, each individual stockholder of private corporation is liable for its indebtedness to amount of stock subscribed and unpaid.

Corporations—Stockholders Held Liable to Creditors of Corporation for Unpaid Subscriptions.

7. Although stock certificates were inscribed "Full-Paid and Non-Assessable," and each certificate of preferred stock contained statement that all common stock was paid for by transfer to corporation of options on land, and that part of stock so paid for had been returned to company to be given as bonus to purchasers of preferred stock, in view of fact that most of stockholders resided in vicinity and had opportunity to learn of value of options and did not attempt to rescind though they held stock many years, they were liable under Section 6872, Or. L., for unpaid subscriptions to creditors of corporation ignorant of fraud in issuing such stock for options on land.

Corporations—Creditors Suing Stockholders for Unpaid Subscriptions Held not Guilty of Laches.

8. Creditors who sued stockholders for unpaid subscriptions promptly after obtaining judgment against corporation, which was returned unsatisfied, *held* not guilty of laches, regardless of time between issue of stock and action against corporation in which execution was returned unsatisfied.

Corporations—Not Essential for Creditor to Secure Judgment Against Insolvent Corporation and have Execution Returned Unsatisfied as Condition Precedent to Suing Stockholders.

9. It is not essential that creditor secure judgment against insolvent corporation establishing demand and have execution returned unsatisfied, as condition precedent to suing stockholders in equity for unpaid subscriptions.

Pleading—Unnecessary for Judgment Creditors of Corporation Suing Stockholders for Unpaid Subscription to Allege That on Becoming Creditors They Believed Stock Paid for.

10. In suit by judgment creditors of corporation against stockholders for unpaid subscription, it was unnecessary for plaintiffs to allege that when they became such creditors they believed stock in question to have been paid for, and relied upon apparent capital stock of corporation.

---

6. Liability of subscriber to stock of corporation on unpaid subscriptions, see notes in 46 L. R. A. 246; L. R. A. 1918D, 1049. See, also, 7 R. C. L. 355.

9. Necessity of exhausting remedy against corporation before enforcing stockholders' liability, see notes in 2 Ann. Cas. 28; 16 Ann. Cas. 1152. See, also, 7 R. C. L. 392.

Judgment—Failure to Make Substitution for Parties to Suit Dying
    Before Entry of Decree Held Error.
   11.  Where parties to suit died before entry of decree failure to
make substitution for them was error.

See (1) 14 **C. J.,** p. 1061.  (2) 14 **C. J.,** p. 963.  (3) 14 **C. J.,**
p. 288 (1926 Anno).   (4) 14A **C. J.,** p. 194.   (5) 40 **Cyc.,** p. 539.
(6) 14 **C. J.,** p. 952.  (7) 14 **C. J.,** p. 964.   (8) 14 **C. J.,** p. 1105
(1926 Anno.).   (9) 14 **C. J.,** p. 1089 (1926 Anno.).   (10) 14 **C. J.,**
p. 1121.   (11) 33 **C. J.,** p. 1107.

From Linn: GEORGE G. BINGHAM, Judge.

Department 2.

This is a suit in equity prosecuted by these plaintiffs for and on behalf of themselves and all others similarly situate, for the purpose of recovering the unpaid balances due on the shares of stock of a corporation now insolvent. Plaintiffs are judgment creditors of the Linnhaven Orchard Company, a private corporation organized and existing under the laws of the State of Oregon, and the defendants herein are stockholders of that corporation. The chief purpose of the corporation was to acquire and sell orchard lands. The plaintiffs herein contracted to purchase orchard tracts from the company, but, after a time, they became discouraged and ceased to make their payments. The company was financially involved, and when its debtors ceased to pay, the result was insolvency of the corporation.

Plaintiffs aver, among other things, that on March 19, 1915, W. W. Green commenced a suit in the Circuit Court of the State of Oregon for Linn County against the Linnhaven Orchard Company and the following named plaintiffs herein, as defendants: Harold Smith, H. E. Still, G. M. Galt, Charles W. Chech, A. R. Grant, H. E. Grant, and R. G. Grant, for the foreclosure of a mortgage held by Green. These plaintiffs just named answered and filed a cross-

complaint in that suit, praying for a foreclosure of vendees' liens held by them upon certain orchard tracts. Issues were duly made, the cause was tried, and a decree entered by the Circuit Court. Appeal was had. The cause was heard in this court (89 Or. 513, 174 Pac. 620, 621), and pursuant to its mandate the Circuit Court, on November 14, 1918, entered a decree against the Linnhaven Orchard Company in favor of the above-named plaintiffs in the following amounts: Harold Smith, $1,200; H. E. Still, $3,600; G. M. Galt, $1,800; Charles W. Chech, $1,800; A. R. Grant, $1,800; H. E. Grant, $1,800; R. G. Grant, $1,800. Execution was duly issued, the property described in the foreclosure proceedings was sold, and the execution was returned by the sheriff of Linn County, Oregon, showing the judgment in favor of the plaintiffs hereinbefore mentioned to be wholly unsatisfied. Thereafter, the sale was confirmed, and deficiency judgments were entered in favor of the judgment creditors mentioned above.

On February 3, 1916, the First Savings Bank of Albany, Oregon, instituted a mortgage foreclosure suit against the Linnhaven Orchard Company and others, including the following named plaintiffs herein: Lydia L. Meyer, Alice C. Arzt, Frank Buehring, W. T. Franklin, Frank Rost, Elizabeth B. Page, J. J. Page, H. A. Noble, Andrew Torkelson, Tena Torkelson, W. E. Still, H. E. Still, W. H. Page and Eustace Spence. The defendants in that suit, other than the Linnhaven Orchard Company, filed their answer and cross-complaint, demanding a foreclosure of their vendees' liens. The court entered a decree in favor of the First Savings Bank of Albany, Oregon, the plaintiff therein, foreclosing its mortgage, and granting to these plaintiffs last above mentioned a decree against the Linnhaven Orchard Company as

follows: In favor of Lydia L. Meyer, in the sum of
$1,800; Alice C. Arzt, $1,800; Frank Buehring, $1,800;
W. T. Franklin, $1,200; Frank Rost, $2,400; Elizabeth
B. Page, $3,600; H. A. Noble, $4,800; Andrew and
Tena Torkelson, $1,200; W. E. and H. E. Still,
$5,400; W. H. Page, $1,000, Eustace Spence, $600.
The judgments were docketed, execution was issued,
the property sold, and the execution returned by the
sheriff of Linn County showing judgments of the
persons last above mentioned to be wholly unsatisfied.
Thereafter the sale was confirmed and by the order
of confirmation deficiency judgments were entered in
favor of such persons.

On September 25, 1915, H. H. Hewitt, as trustee,
commenced a mortgage foreclosure suit in the Cir-
cuit Court of the State of Oregon for Linn County,
against the Linnhaven Orchard Company, and in-
cluded the following named plaintiffs herein as de-
fendants: Bernard Arndt, G. A. Sarles, Dora A.
Sarles, Martha J. Leslie, John E. Paulsen, C. H.
Turner, M. J. O'Toole, Walter I. Howard, M. D. Van
DeWalter, Alice B. Penniston, John Loretz, E. S.
Nelson, Jane H. Baird, and Jean Grant Spence. The
defendants named in that suit, other than the Linn-
haven Orchard Company, filed an answer and cross-
complaint, demanding the foreclosure of certain ven-
dees' liens held by them. As a result of the suit, a
decree was entered in the judgment lien docket of
Linn County, Oregon, in favor of cross-complainants,
as follows: Bernard Arndt, $1,200; G. A. Sarles,
$1,200; Dora A. Sarles, $1,200; Martha J. Leslie,
$1,800; John E. Paulsen, $2,200; C. H. Turner, $1,700;
M. J. O'Toole, $1,800; Walter I. Howard, $1,800;
M. D. Van DeWalter, $1,800; Alice B. Penniston, $300;
John Loretz, $600; E. S. Nelson, $600; Jane H. Baird,
$1,200; Jean Grant Spence, $1,200.

It is further averred that the Linnhaven Orchard Company has no property out of which the plaintiff judgment creditors can be satisfied, in whole or in part, except the assets arising from unpaid stock subscriptions. Plaintiffs aver:

"That section 4 of the articles of incorporation of the Linnhaven Orchard Company provides as follows: The amount of its capital stock shall be $300,000, divided into 3000 shares of the par value of $100 each; $100,000 of the said capital stock shall be preferred stock, and may be retired and shall be entitled to perferential noncumulative annual dividends from the surplus profits of said corporation, but shall have no voice in the management and control of the affairs of said corporation; that $200,000 of the said capital stock shall be the common stock of the said corporation and the holders thereof shall be entitled to one vote for each share of stock held by them in all the elections of said corporation, and shall control all the affairs of said corporation."

The complaint further avers that the common stock was subscribed for by defendants as follows: Alfred Schmitt, 225 shares; W. H. Davis, 225 shares; Worth Houston, 225 shares; E. R. Lake, 225 shares; F. J. Fletcher, 225 shares; Owen Bean, 225 shares; E. B. Horn, 225 shares; C. W. Tebault, 425 shares; that this stock was not paid for by the defendants at any time, and that the only consideration therefor consisted of certain options for the purchase of approximately 3,000 acres of land situate in Linn County, Oregon, which options were taken and accepted by the board of directors of the Linnhaven Orchard Company in full payment of the subscriptions made by the stockholders of the company to the common stock, further—

"That the options so transferred to the corporation as aforesaid were wholly valueless, the same not being paid for and no part of the purchase price for

the land having been paid for, all of which was known to the said defendants, who were the purchasers of the original stock as aforesaid, and said stock was taken and accepted by said defendants as paid up stock with full knowledge that no value had been given therefor, and the said transaction was and is wholly and grossly fraudulent, and was entered into and consummated by said defendants with the purpose and intent of defrauding the creditors of said corporation.''

It is further averred that thereafter the common stock of the par value of $100 per share, which had theretofore been returned to the corporation, was sold and issued to the following defendants in the following amounts: E. F. Sox, 5 shares; P. S. Ware, 5 shares; P. A. Goodwin, 5 shares; J. W. Chambers, 5 shares; D. B. Hammond, 5 shares; Velma G. Davis, 20 shares; Anna Grugett, 5 shares; W. S. Gordon, 5 shares; E. C. Violett, 5 shares; Orak Harkness, 5 shares; Annie L. Fortmiller, 5 shares; Mary E. Davis, 5 shares; W. W. Poland, 5 shares; H. C. Poland, 5 shares; C. L. Johnson, 5 shares; Susan E. McBride, 5 shares; L. B. Luper, 10 shares; J. K. Haight, 10 shares; Oregon Title & Trust Company, 350 shares; E. C. Roberts, 35 shares; J. M. Hawkins, 5 shares; John C. Holbrook, 5 shares.

Plaintiffs aver that the stock sold to the defendants last above named was issued, sold, and received by them, without any consideration, and that the stock has never been paid for. They pray for a decree in the amount of the several judgments secured by the plaintiffs herein; that the amount of such judgment against the defendants in this suit be limited to the amount of stock issued to and not paid for by the defendants, and for an adjudication of the financial standing of the defendants herein; further—

"That each of said defendants who are financially able so to do be required to pay upon the judgments of plaintiffs their *pro rata* shares of said judgment, based upon the amount of stock issued to each defendant as compared with the total amount of stock issued to persons who are financially able to pay for the amount thereof."

Defendants W. H. Davis and Worth Houston filed their answer denying generally and specifically each and every allegation contained in the complaint, "except as hereinafter alleged." They aver the incorporation of the Linnhaven Orchard Company and the issuance of common stock to the persons named in the complaint in consideration of options for the purchase of land; that the transaction was in good faith, and that full payment for the stock thus issued was had by the transfer of options for the purchase of land. They aver plaintiffs' knowledge with reference to the issuance of common stock of the company in the amount of $200,000. They plead in bar the statute of limitations, and aver laches upon the part of the plaintiffs in the commencement of their suit.

Defendants E. F. Sox, P. A. Goodwin, J. W. Chambers, Velma G. Davis, W. S. Gordon, Orak Harkness, Annie L. Fortmiller, W. W. Poland, H. C. Poland, Susan E. McBride, L. B. Luper, Mary E. Davis, J. K. Haight, and John C. Holbrook, appeared by their attorneys and, filing their answer, adopted much of the answer of defendants Davis and Houston. But, in addition thereto, they aver, among other things, that they subscribed for the preferred stock of the Linnhaven Orchard Company through its officers and agents and thereupon received a like number of shares of treasury stock as a bonus, which stock the officers and agents of the company represented to be fully paid and nonassessable. They further aver that these representations that this stock was fully paid

and nonassessable were false; that at the time they made such subscription, they believed the representations to be true, and relied thereon to their damage in the amount paid for the preferred stock; that they were induced by such representations to make the subscription, to their injury, and never learned of their falsity until the commencement of this suit; that they never made any contract with the Linnhaven Orchard Company to pay any consideration for the treasury stock, but believed at all times that such stock was fully paid and nonassessable, and upon that consideration received it; and that they never knew that that stock was issued for more than its par value or in the manner hereinbefore alleged until about the time this suit was commenced.

The Oregon Title & Trust Company, E. C. Roberts and J. M. Hawkins, by their answer, allege considerable of the matter averred in the Davis and Houston answer. Among other things, they aver that defendant, Oregon Title & Trust Company, was a private corporation organized and existing under the laws of the State of Oregon, having its principal office and place of business at Albany, Oregon; that this corporation bought 430 shares of the common stock of the Linnhaven Orchard Company from C. W. Tebault, E. B. Horn, F. J. Fletcher, E. R. Lake, Worth Houston, W. H. Davis and A. C. Schmitt, and that each of the certificates issued to and received by the Oregon Title & Trust Company stated that such stock was fully paid and nonassessable; that such stock was sold to the trust company upon that representation, and that the company believed the representations to be true and relied thereon, to its injury in the amount paid for that stock. They aver the transfer of some of this stock to R. G. Grant, G. A. Sarles, and H. E. Still; that the trust company, on Feb-

ruary 12, 1910, subscribed for 70 shares of the preferred stock of the Linnhaven Orchard Company and received from that company as a bonus a like number of shares of the treasury stock, which the Orchard Company represented to be fully paid and nonassessable. They further aver that at a meeting of the stockholders of the Linnhaven Orchard Company of date October 28, 1904, a motion was made and adopted by the stockholders, instructing the directors of that corporation to require that payment of preferred stock subscribed for be made, one half in cash, "and the balance on the call of the directors, and with each sale of preferred stock awarded to a subscriber, said directors were directed to award to such subscribers one share of said treasury stock, fully paid and nonassessable."

Alfed C. Schmitt filed his amended answer and pleaded in defense many of the alleged facts hereinbefore referred to. He avers that by reason of the matters and facts alleged in his answer, the plaintiffs were, and now are, estopped from questioning the purchase of the stock by the subscribers of the capital stock of the Linnhaven Orchard Company.

Plaintiffs replied to the answers of the several defendants.

The court made elaborate findings of fact and conclusions of law, and decreed that with the exception of R. G. Grant, G. A. Sarles and H. E. Still, the plaintiffs recover. As to the three named, the suit was dismissed for the reason that they had knowledge that there was no consideration paid for the common stock of the Linnhaven Orchard Company.

From the decree rendered, defendants appeal.

AFFIRMED.

For appellants there was a brief over the names of *Messrs. Hewitt & Sox* and *Messrs. Weatherford &*

*Wyatt,* with oral arguments by *Mr. H. H. Hewitt, Mr. J. K. Weatherford* and *Mr. G. G. Smith.*

For respondents, there was a brief over the names of *Mr. Roy F. Shields, Mr. W. C. Winslow* and *Mr. S. M. Endicott,* with oral arguments by *Mr. Shields* and *Mr. Winslow.*

BROWN, J.—1. The plaintiffs' judgments referred to in our statement are severally based upon payments made by each of them to the Linnhaven Orchard Company on contracts between them and the company, wherein each of the plaintiffs contracted to purchase from the Linnhaven Orchard Company certain orchard tracts. The trial court had jurisdiction of the parties and of the subject matter of the suits wherein the judgments were rendered. It follows that in the absence of fraud such judgments are conclusive here.

2. In carrying out a plan to procure options to purchase real estate and form a corporation to buy and sell real estate, including orchard lands, C. W. Tebault, E. B. Horn, Owen Beam, F. J. Fletcher, E. R. Lake, Worth Houston, W. H. Davis and Alfred C. Schmitt assessed themselves in the sum of $75 each, for the purpose of raising money to be expended in procuring such options to purchase lands and in defraying other necessary promotion expenses.

On September 28, 1909, the Secretary of State issued his certificate of filing and recording articles of incorporation of the Linnhaven Orchard Company.

In furtherance of their plan, Tebault, aided by Beam, Houston and Davis, between October 2 and October 28, 1909, secured options to purchase about 2,600 acres of land, and thereafter secured additional options to purchase about 1,000 acres, which lands were situate on the rolling hills of the South Fork of the

Santiam River East of Lebanon in Linn County, Oregon. These options were procured with a view of transferring them to the Linnhaven Orchard Company. On October 28, 1909, E. R. Lake, C. W. Tebault, E. B. Horn, Owen Beam, F. J. Fletcher, Worth Houston, W. H. Davis and Alfred Schmitt, being all the subscribers for the common stock of the corporation, met for the purpose of electing directors and for the transaction of other business. Each of the eight promoters other than Alfred C. Schmitt was elected a director of the company. The minutes of the meeting show this entry:

"It was then announced to the meeting that C. W. Tebault (director), acting for himself and the other stockholders of the company, had obtained valid options to purchase lands in Linn County, Oregon, aggregating 3,000 acres."

The promoters, then acting for the corporation, "unanimously agreed, upon motion duly made and seconded, that the directors of the corporation be directed to accept the transfer of said options, together with others yet to be secured, covering about 3,000 acres, to the corporation, in full payment of the subscriptions made by the said stockholders of the company to the common stock of the company." It further appears that the promoters agreed with each other to transfer to the corporation one half of the common stock issued to them, to be held in the treasury of the corporation, to be disposed of "as the directors might see fit, for the benefit of the company." It was moved and carried that the money realized from the sale of preferred stock of the company be applied to take up the options transferred by the stockholders to the corporation.

The trial court found:

"The only value there was in the options was the time employed by Tebault in securing them and the small amount of expense money. * * The promoters undoubtedly believed that they could issue the common stock to themselves under the plan of organization in payment for their good will and influence in obtaining options and promoting the orchard scheme. * * The directors of the corporation did not exercise their judgment as to the value of the options, but simply by resolution carried out a scheme of the promoters by which they were to receive 2,000 shares of the common stock of the corporation without paying anything of value therefor."

The court properly found that the transaction constituted a gross fraud upon the Linnhaven Orchard Company and its creditors.

As ably argued by defendants' counsel, it is true that, by express provision of our statute, the judgment of the board of directors in the purchase of the options is made conclusive in the absence of fraud: Or. L., § 6872; *Joplin* v. *Nunnelly*, 67 Or. 566 (134 Pac. 1177); *Farrell* v. *Davis*, 85 Or. 213 (161 Pac. 94, 703).

The provision of that section of our Code relied upon by defendants, and which reads:

"In the absence of actual fraud in the transaction, the judgment of the directors as to the value of the property purchased shall be conclusive,"

introduces no novelty into the law, but simply makes a statutory declaration of the law: *Holcombe* v. *Trenton White City Co.*, 80 N. J. Eq. 122, 141 (82 Atl. 618).

3. Under that statute, property should not be considered as overvalued, merely because it subsequently turns out to be so: *Farrel* v. *Davis, supra.* However, a well-known principle is thus announced by 1 Cook on Corporations (7 ed.), at page 205:

"There is a limit beyond which the courts will not go in sustaining the issue of stock for property taken at an overvaluation. If the property which is turned in is practically worthless, or is unsubstantial and shadowy in its nature, the courts will hold that there has been no payment at all, and that the stockholders are liable on the stock."

In the case at bar, the promoters turned in no land to the corporation, but merely transferred to it options to purchase certain lands and to pay full value therefor. As observed by the trial judge, the consideration for the $200,000 in stock consisted only in the goodwill of the promoters of the corporation: See *Rasor* v. *West Coast Development Co.*, 98 Or. 581 (192 Pac. 631).

In the case of *Atwell* v. *Schmitt*, 111 Or. 96, 225 Pac. 325, Mr. Justice Rand, in speaking for this court concerning the immediate transaction, said in applying the statute thereto:

"The judgment of the directors of a corporation upon the value of property or stock to be taken and accepted by the corporation in exchange for its own stock in payment of a subscription contract, the exercise of which, when acted upon, is made conclusive by statute, refers to an honest attempt to determine the value of the property or stock by a board of directors representing the corporation alone, and jealous of its rights and interests, and anxious to secure for the corporation all that it is justly entitled to. Anything less than that is dishonest and fraudulent. The directors may be honestly mistaken. They may exercise a very poor judgment and make a very poor bargain, but this is wholly immaterial so long as they have no personal interests of their own to further, and act fairly and honestly by the corporation they profess to represent. * * In the transaction involved here, there was no such an exercise of judgment by the directors as to the value of the options as the statute intended should be exercised by a board of directors in the purchase of property or stock, and for that

reason the pretended exercise of judgment by the directors is not conclusive upon any creditor of the corporation.''

4. The subscribed capital stock was not subject to disposal at the whim of these promoter-directors: *American Life Ins. Co.* v. *Ferguson,* 66 Or. 417 (134 Pac. 1029). Under the facts in the instant case, the pleading of the fraud of the directors in issuing the stock to themselves is sufficient. The directors were the promoters, the vendors, and the official representatives of the vendee. An independent judgment as to the value of the options was never had.

In a similar case it was said:

''The duty of promoters in such cases is based upon and arises out of the fact that they are acting as voluntary trustees, and hence are subject to all the rules of law applicable to the conduct of trustees.

''It was then the duty of the three gentlemen named * * , as vendors of these properties, to furnish the corporation with a competent and independent board of directors to negotiate this sale.'' See, *Receiver* v. *Heppenheimer,* 69 N. J. Eq. 36, 72 (61 Atl. 843, 857).

If this stock had been issued by the Linnhaven Orchard Company for payment in money or money's worth, in accordance with law, and, if it had been reacquired by the company by donation as treasury stock to be disposed of as provided in the resolution, then the sale of such stock at less than par, or its issuance as a bonus, unquestionably would have been lawful: 14 C. J., § 640.

5. The fictitiously paid-up stock issued to the directors and promoters in the case at bar was essentially ''watered'' stock: 1 Cook on Corporations (7 ed.), § 26.

''The ease with which watered stock could be legally issued under the common law led to the enactment of

statutory and constitutional prohibitions against such issues. * * They are so sweeping in their effects, and so disastrous to innocent holders of corporate securities, that the courts are reluctant to declare void the stock and bonds which have passed into *bona fide* hands. * * The courts have construed away the language and purpose of the provisions. * * The bewildering currents of conflicting decisions, even in those states where the most earnest efforts are made to enforce the constitutional provisions, leave the investor on an unknown sea, without chart, compass, landmark, or pilot." 1 Cook on Corporations (7 ed.), § 47.

But in this jurisdiction, the fundamental and statutory law relating to the liability of the subscribers to, and holders of, the stock of a corporation has been held to mean what it says.

In *McAllister* v. *American Hospital Assn.*, 62 Or. 530 (125 Pac. 286), the court cited with approval the leading case of *Harrison* v. *Remington Paper Co.*, 140 Fed. 385 (5 Ann. Cas. 314, 72 C. C. A. 405, 3 L. R. A. (N. S.) 954), where Mr. Justice SANBORN, speaking for the court said:

"The Constitution, the statutes under which the corporation is organized, and the established rules of law in force when he becomes a stockholder are read into and become a part of this contract. By his subscription for the stock, or by his receipt and acceptance of it, solemnly agrees, in consideration of the benefits derived from its ownership, that he will faithfully perform the obligations and discharge the duties imposed upon a stockholder by the Constitution, the statutes, and the law."

6. Our statute enacts:

"All sales of stock, whether voluntary or otherwise, transfer to the purchaser all rights of the original holder or person from whom the same is purchased, and subject such purchaser to the payment of any

unpaid balance due, or to become due, on such stock but if the sale be voluntary, the seller is still liable to existing creditors for the amount of such balance, unless the same be duly paid by such purchaser." Or. L., § 6872.

Our Constitution provides:

"The stockholders of all corporations and joint stock companies shall be liable for the indebtedness of said corporation to the amount of their stock subscribed and unpaid." Oregon Const., Art. XI, § 3.

Under the terms of the foregoing constitutional provision, each individual stockholder of a private corporation is liable for its indebtedness, but his liability is limited to the amount of his stock subscribed and unpaid: *Ladd* v. *Cartwright,* 7 Or. 329; *Hodges* v. *Silver Hill Mining Co.,* 9 Or. 200; *Brundage* v. *Monumental G. & S. Mining Co.,* 12 Or. 322 (7 Pac. 314); *Hawkins* v. *Donnerberg,* 40 Or. 97 (66 Pac. 691, 66 Pac. 908); *MacBeth* v. *Banfield,* 45 Or. 553 (78 Pac. 693, 106 Am. St. Rep. 670); *Shipman* v. *Portland Construction Co.,* 64 Or. 1 (128 Pac. 989); *McAllister* v. *American Hospital Assn., supra.*

It was held by this court in *Branson* v. *Oregonian Ry. Co.,* 10 Or. 278, that the constitutional provision noted above applies only to the holders of the legal title of unpaid stock.

In *Shipman* v. *Portland Construction Co., supra,* it was decided that the liability of stockholders is individual, and not joint, and, in *Patterson* v. *Lynde,* 106 U. S. 519 (27 L. Ed. 265, 1 Sup. Ct. Rep. 432, see, also, Rose's U. S. Notes), that the rights of a creditor under Article XI, Section 3, Oregon Constitution, are to be enforced by suit in equity. To like effect is *MacBeth* v. *Banfield, supra.*

In applying the constitutional provision above set out, Mr. Chief Justice EAKIN, speaking for the court

in *McAllister* v. *American Hospital Assn., supra*
wrote:

"As we have seen, the disposition of the stock by
the corporation to defendants was not by formal
subscription to the stock, but by a contract of sale
for a specific price less than par, but the capital stock
of a corporation is presumed to represent the capital
in the business, a trust fund in that amount for the
benefit of the creditors, and, as to them, the corpora-
tion has no authority to make any contract in the
disposal of the stock that will reduce its capital, and
persons subscribing for stock or otherwise acquiring
it from the corporation are bound to take notice of
the power of the corporation. This is what is in-
tended by Section 3 of Article XI of the Constitution,
which provides that: 'The stockholders of all corpora-
tions and joint stock companies shall be liable for the
indebtedness of said corporation to the amount of their
stock subscribed and unpaid.' This is well stated in
*MacBeth* v. *Banfield*, 45 Or. 553 (78 Pac. 693, 106 Am.
St. Rep. 670), where Mr. Justice Wolverton quotes
with approval from *Hospes* v. *Northwestern M. & C.
Co.*, 48 Minn. 174 (50 N. W. 1117, 15 L. R. A. 470, 31
Am. St. Rep. 637) : 'The capital of a corporation is the
basis of its credit. It is a substitute for the indi-
vidual liability of those who own its stock. People
deal with it and give it credit on the faith of it.
They have a right to assume that it has paid-in
capital to the amount which it represents itself as
having; and if they give it credit on the faith of that
representation, and if the representation is false, it
is a fraud upon them.' Therefore, the holders of the
stock issued as a bonus or gift to promoters, or other-
wise disposed of by the corporation for less than par
value, are liable accordingly for the par value of the
stock to creditors who have acted upon the faith of
the capital as represented by the stock."

In the same case, a subscriber to the stock of a
corporation is thus defined:

"Subscription to the stock is presumed from any
agreement or act by which the stock is acquired from

the company.   It is said in Cook, Corporations, section 52: 'Any agreement by which a person shows an intention to become a stockholder is sufficient to bind both him and the corporation.   When one accepts or assumes the position and duties and claims the rights and privileges and emoluments of a stockholder, and the corporation accepts or acquiesces therein, such person is estopped to deny that he is a subscriber, even though there may have been something irregular or defective in the form or manner of his subscription, or there may have been no formal subscription at all.' '' *McAllister* v. *American Hospital Assn.,* 62 Or. 530, 537 (125 Pac. 289).

In *Campbell* v. *Coin Mach. Mfg. Co.,* 96 Or. 119, 124 (188 Pac. 197), Mr. Justice BEAN wrote:

''The general rule is, as provided by our statute, that persons subscribing for the capital stock in a corporation are obligated to pay therefor when regularly required to do so.   The taking of certificates of stock without subscription implies a promise to pay for them.''

*Grants Pass Hardware Co.* v. *Calvert,* 71 Or. 103, 120 (142 Pac. 569), was a suit by the corporation against its former stockholders.   It was there held:

''If stock were issued as paid-up stock, when it was not paid for, or gratuitously with the consent of all the stockholders of the company, the company could not subsequently repudiate the declaration and agreement, when no actual fraud entered into the transaction, and collect either from the person receiving the stock, or his transferee pay for the stock, as the company would be estopped from doing so.''

In that case this court quotes with approval the following from the leading case of *Scoville* v. *Thayer,* 105 U. S. 153 (26 L. Ed. 968, see, also, Rose's U. S. Notes), where the court said:

''The stock held by the defendant was evidenced by certificates of full paid shares.   It is conceded to have

112 Or.—45

been the contract between him and the company that he should never be called upon to pay any further assessments upon it. The same contract was made with all the other shareholders, and that fact was known to all. As between them and the company, this was a perfectly valid agreement. It was not forbidden by the charter or by any law or public policy, and, as between the company and the stockholders, was just as binding as if it had been expressly authorized by the charter."

The court then calls attention to the further holding of the United States Supreme Court in the Scoville case, as follows:

"But the doctrine of this court is, that such a contract, though binding on the company, is a fraud in law on its creditors, which they can set aside; that when their rights intervene and their claims are to be satisfied, the stockholders can be required to pay their stock in full."

7. The defendants, other than the promoters, assert that they acquired the stock in ignorance of the fraud perpetrated by the organizers of the corporation.

There are many decisions and texts to the effect that good-faith purchasers, for value, of shares of stock issued by a corporation purporting to be fully paid and nonassessable, cannot be held liable when it is shown that they purchased in ignorance of the fraud. See extensive note by Mr. Freeman in 3 Am. St. Rep., pp. 806–873. However, in that same note, the editor thereof, at pages 824, 825, stated, and cited many authorities in support of, the true doctrine pertaining to fraud as affecting stockholders' liability for unpaid subscriptions. He wrote:

"If one is induced to subscribe for or purchase shares of stock of a corporation through the fraud of its agents, he may have all the remedies, affirma-

tive and defensive, against the corporation, which he might have had against a principal in any other similar case (citations). But the contract entered into through fraud is voidable merely, and not absolutely void. It is valid and binding until the defrauded party elects to treat it as void. * * It is therefore settled that if a shareholder, whose subscription was obtained through the fraud of the company's agents, has not been vigilant in discovering the fraud and in repudiating the contract, it will be no defense as to creditors of the corporation, and that in general it will be too late for him to set up the fraud after the corporation has become insolvent or bankrupt (numerous citations)."

In *White* v. *Price,* 39 Hun, 394, 108 N. Y. 661 (15 N. E. 427), it was held that purchasers of shares of stock are chargeable with constructive notice of the contents of the certificates issued by the corporation and received by them, whether they examine them or not.

It has also been held that the acceptance of certificates of stock which contain information which, if followed up, would lead to a knowledge of the truth, may preclude subscribers, when sued by creditors of the company, from repudiating their obligation because of fraud: *National Park Bank* v. *Nichols* (1869), 2 Biss. 146 (Fed. Cas. No. 10,047).

The facts in the case at bar afford an illustration of the principle that in a case of corporate insolvency, where the stockholders have stood by for years, the equities of the creditors, who have no knowledge of the fraud, supersede those of the stockholders: *Morgan* v. *Ruble,* 81 Or. 641 (160 Pac. 543); *Meholin* v. *Carlson,* 17 Idaho, 742 (107 Pac. 755, 134 Am. St. Rep. 286); Jones on Insolvent and Failing Corporations, § 399; *Scott* v. *Abbott,* 160 Fed. 573 (87 C. C. A.

475). See authorities in note, 3 Am. St. Rep. 825. See, also, note, 33 L. R. A. 721, 725.

It is true, as pleaded by defendants, who assert that they were innocent purchasers, that their stock certificates bore the inscription, ''Full-Paid and Non-Assessable.'' But it is also true that each certificate of the preferred stock bore upon its face the statement that all common stock was subscribed for at the time of the organization of the corporation and was paid for by the transfer to the corporation of the options hereinbefore described. These certificates likewise bore the information that $100,000 of the stock paid for by the options had been returned to the company, to be given as a bonus to the purchasers of the preferred stock.

These defendants, or the most of them, resided in the vicinity of the company's office and had every means of learning all facts in relation to the value, or lack of value, of the options. They retained the stock for years and never attempted to rescind their contracts. Upon the other hand, the plaintiffs, other than the three mentioned in our statement and whose suit was dismissed, were ignorant of the fraud practiced upon the corporation and upon the future creditors.

The authorities overwhelmingly support the formula that if a stockholder has been induced by fraudulent representations to become a member of a corporation, be must act with diligence if he desires to annul his contract. Concerning such a contract, Jones on Insolvent and Failing Corporations, at Section 399, says:

''It is valid and binding until the defrauded party elects to treat it as void; and if he fails to repudiate it before the rights of innocent third parties have intervened, their equities to treat it as valid may be superior to his claim to avoid it. So, if he has not

been vigilant in discovering the fraud and repudiating the contract, it will be no defense as to creditors of the corporation; and that in general, it will be too late for him to set up the fraud after the corporation has become insolvent or bankrupt.''

In accord with that doctrine, it is stated by Morawetz on Corporations, at Section 839:

''It has accordingly been settled, that, if a corporation is insolvent, a stockholder whose contract of subscription was obtained by the fraud of the company's agents cannot diminish the security of *bona fide* creditors, by rescinding his contract to contribute the amount of capital subscribed by him.''

The following excerpt from *Scott* v. *Abbott,* 160 Fed. 573, 582 (87 C. C. A. 475), is applicable to the case at issue;.

''It is a familiar, general principle of law, as well as of morals, that when one of two innocent parties must suffer by the fraud of another, the one who has enabled such third party to commit the fraud ought to sustain the loss. * * When one has for a considerable period of time prior to the failure of a corporation occupied the position of one of its stockholders, and exercised and enjoyed the rights, privileges, and fruits of that relation, including the chance of enhanced value of his holdings, when fortune frowns, and the chances turn against him, it is too late to assert, as against creditors of the corporation, the right to rescind his contract of stock subscription on the ground of false representations after a state of insolvency has supervened, and after proceedings to wind up the corporation for the benefit of creditors have been or are about to be instituted.''

8. Defendants plead that plaintiffs are barred by laches.

Plaintiffs had no right to institute this suit until their right to proceed against the stockholders accrued. A well-established rule is thus stated:

"Where the statutory liability of a stockholder is immediate and primary, and not contingent on obtaining a judgment against the corporation, the statute of limitations plainly begins to run against the stockholder at the same time it begins to run against the corporation; but where a creditor is first obliged to obtain a judgment on his claim against the corporation, and have an execution issued thereon and returned unsatisfied, the statute of limitations does not begin to run in favor of a stockholder until the return of the execution." 7 R. C. L., p. 413.

To similar effect is 1 Cook on Corporations (7 ed.), § 200.

There are exceptions to the rule quoted above.

9. This court has held that vain things are unnecessary; hence, it is not essential that a creditor should secure a judgment against an insolvent corporation, establishing his demand, and having an execution returned unsatisfied, as a condition precedent to instituting a suit in equity: *Shipman* v. *Portland Construction Co.,* 64 Or. 1 (128 Pac. 989); *Garretson-Hilton Lbr. Co.* v. *Hinson,* 69 Or. 605 (140 Pac. 633).

Under the facts disclosed by the record, the plaintiffs are not barred from pursuing their remedy against the stockholders: *Wills* v. *Nehalem Coal Co.,* 52 Or. 70 (96 Pac. 528); *Atwell* v. *Schmitt, supra.*

10. It was unnecessary for the judgment creditors of the corporation to allege that when they became such creditors they believed the stock involved herein to have been paid for, and that they relied upon the apparent capital stock of such corporation. If the judgment creditors had knowledge of the arrangement under which the bonus stock was issued, that was a matter of defense to be pleaded and established by the stockholders: *Rasor* v. *West Coast Development Co., supra; McAllister* v. *American Hospital Assn., supra;* 7 R. C. L., 363.

11. John A. McBride and J. K. Haight died before the entry of the decree against them. No substitution of parties was had. This was error. The complaint as to them is dismissed. Otherwise, the decree appealed from is affirmed.   AFFIRMED.

McBRIDE, C. J., and BEAN and RAND, JJ., concur.