Argued at Pendleton October 28; affirmed December 15, 1936;
rehearing denied January 12, 1937

# GORDON *v.* RALSTON

(62 P. (2d) 1328)

Department 2.

*E. R. Ringo,* of La Grande (Coan & Rosenberg, of Portland, on brief), for appellant.

*John S. Hodgin,* of La Grande, for respondent.

RAND, J. This is a suit to foreclose an alleged lien on two certificates of stock alleged to have been issued to the defendant as a subscriber therefor by the Mortgage Investment Company, an Oregon corporation which has since been adjudged a bankrupt. These certificates, the complaint alleges, were issued and delivered to the defendant and were by him returned to the company as a pledge to secure the payment of a promissory note for $5,000 which the defendant gave in payment therefor. The whole evidence, however, shows that these certificates were never delivered to the defendant nor were they ever in his possession and, if issued at all, have always been in the possession of the Mortgage Investment Company.

The plaintiff is the duly appointed, qualified and acting trustee in bankruptcy of said bankrupt corpora-

tion and brought this suit on behalf of its creditors. The defendant is a practicing physician in La Grande, Oregon.

In his answer, the defendant alleges that he was induced to subscribe for said stock and to execute his note therefor by the false and fraudulent misrepresentations of one Jacob Dobrin, an agent of said company who had been employed to sell the stocks of said company. The note was executed and delivered to said Dobrin on October 25, 1929, and, by its terms, was payable in installments of not less than $150 per month with interest from the date thereof at the rate of 7 per cent per annum. Defendant paid thereon on the date of its execution the sum of $500 and thereafter and on or before April 23, 1930, made other payments which in all aggregated the sum of $1,240.

The subscription contract, among other things, states that "no stock will be issued until the terms and conditions of the sale have been approved by the Board of the Company."

It is also alleged in the answer that at the time the subscription was made and the note given, it was understood and agreed that the stock would be issued and delivered to the defendant within a few days but that the company had wholly failed and refused to deliver the stock as contracted for although such delivery had been frequently demanded.

It is also alleged that, upon discovery of the fraud shortly after April 23, 1930, the defendant notified the company that the contract was rescinded and that he would make no further payments on the note.

Upon these issues, the trial court held that the defendant had been induced to subscribe for the stock and to give his note in payment therefor through misrepresentations of an agent of the company that the company

was at said time in sound financial condition, had a large surplus of assets and moneys on hand, and that the preferred stock subscribed for by the defendant would pay an income of 8 per cent per annum and that the no par common stock subscribed for by him would pay an income of 25 per cent per annum; that these representations were fraudulently made and were known by the agent to be false at the time of making them; that at said time the company was insolvent, and that the defendant had no opportunity to investigate its financial condition and believed said representations to be true and, relying upon them, entered into said contract and subsequently paid thereon, before discovering the fraud, the sum of $1,240.

Based thereon, the court entered a decree cancelling the note and the subscription contract and decreeing that the amount paid thereon by the defendant, with interest on such payments at the rate of 6 per cent per annum from the time when made, be adjudged to be a valid claim against the bankrupt estate. From this decree, plaintiff has appealed.

Plaintiff's principal contention is that, in an action to recover the balance of the unpaid subscription to the capital stock of a corporation, when brought by a creditor of the corporation or by a trustee in bankruptcy, fraud in the procurement of the contract is not a good defense. He bases his contention upon the doctrine announced in *Morgan v. Ruble,* 81 Or. 641 (160 P. 543). In that case, the suit was brought by a creditor of an insolvent corporation against certain of its subscribers to enforce their individual liability for their unpaid subscriptions. It is impossible to determine from the opinion rendered in that case just what the facts were but it was, in effect, there held that a defense based upon false representations made by the promoters of

the corporation to induce a subscription to the capital stock of the corporation could not be maintained against a creditor of the corporation where there was no evidence that the creditor had participated in the fraud. The application of that doctrine, as a general rule, is somewhat limited by the opinion in *Smith v. Schmitt,* 112 Or. 687 (231 P. 176), where it was, in effect, held that, if a shareholder, whose subscription had been obtained through the fraud of the company's agent, had not been vigilant in discovering the fraud and in repudiating the contract, it will be no defense as to creditors of the corporation, and that, in general, it will be too late for him to set up the fraud after the corporation has become insolvent and bankrupt.

It is well settled that where one has been induced by fraud to enter into a contract, the transaction is not, on that account, void but is voidable only. This gives to the defrauded party the right to elect whether to affirm the fraudulent transaction or to rescind it but the contract itself is valid and binding until the defrauded party elects to treat it as void. These rules apply to a subscription contract and where one has been induced to subscribe to the shares of stock of a corporation through the fraud of its agents, he has all the remedies which he might have had against a principal in any other similar case. If he elects to rescind the transaction, he must rescind it as a whole and, if he has received anything under it, he must return what he has received or offer to return it, and, if his offer is not accepted, he must keep the offer good. If, however, the defrauded party fails to repudiate the fraudulent transaction before the rights of innocent third parties have intervened, their equities to treat the transaction as valid may be superior to his claim to avoid it, since it is well settled that subscriptions to the

capital stock of a corporation constitutes, in equity, a trust fund for the benefit of its creditors, and, therefore, a party who has been induced by fraud to subscribe to the capital stock of a corporation, if he elects to rescind the contract, he must do so before any superior rights of a creditor of the corporation have attached and before any insolvency proceedings have been instituted against the corporation, or other act of insolvency committed.

■ The fact, as found by the trial court, that, unknown to the defendant, the Mortgage Investment Company was insolvent at the time of his subscription to the capital stock and that the defendant was induced to believe that it was solvent by the fraudulent misrepresentations of an agent of the company and thereby to change his position, would not defeat his right to rescind provided that, at the time of such rescission, the corporation was a going concern and he had been diligent in discovering the fraud and was not estopped by laches, acceptance of benefits, or the intervening rights of third parties. The rule governing that situation is stated in 14 C. J., section 872, page 599, as follows:

"Even where the strict doctrine is recognized, it cannot apply where the subscriber discovers the fraud and seasonably institutes proceedings for rescission, or gives notice thereof to the proper corporate officers, before insolvency proceedings against or an act of insolvency by the corporation, and while it is a going concern, even though it may in fact be insolvent, since this fixes his rights, and in such case the subsequent insolvency of the corporation and proceedings by or on behalf of creditors cannot defeat his defense of fraud or right to rescission. The mere fact of insolvency of the corporation alone will not defeat the subscriber's or purchaser's right of rescission, where he has been diligent in discovering the fraud and repudiating the con-

tract, unless proceedings of insolvency, voluntary or involuntary, have been instituted, or some act has been committed which is regarded as an act of insolvency."

See also the annotation contained in 41 A. L. R., commencing on page 674.

■ The date when defendant notified the Mortgage Investment Company of his repudiation of the subscription contract is not definitely fixed by the evidence, but it does appear that this notice was given within a short time after the last payment was made on April 23, 1930, and that, at that time, the Mortgage Investment Company was a going concern and that the proceedings in bankruptcy were not instituted until on or about December 17, 1931, which was some seventeen or eighteen months thereafter.

Finding no error in the record, the decree of the circuit court should be and is affirmed.

BEAN, BELT and BAILEY, JJ., concur.