Argued October 10; reversed November 27, 1934

# AMACHER *v.* WESTERN REALTY CORPORATION ET AL.

(38 P. (2d) 64)

*Frank Holmes,* of McMinnville, for appellant.

*R. H. Bassett,* of Salem, for respondent.

BAILEY, J. This suit was instituted by the plaintiff against Western Realty Corporation, alleged to be insolvent, to recover on a promissory note executed and delivered by said corporation to plaintiff, and against Sarah B. Rhodes (formerly Sarah B. Stone) as a stockholder in said corporation, to recover on her alleged unpaid stock subscription a sufficient sum to satisfy plaintiff's claim against the corporation. A decree was entered in favor of the plaintiff against the corporation for the principal named in the note, accrued interest, attorney's fees and costs, and dismissing the suit as to the defendant Rhodes. From the latter part of the decree the plaintiff has appealed.

The principal questions involved on this appeal are the following: (1) Was the defendant corporation insolvent at the time this suit was instituted? (2) If said corporation was then insolvent, could the defendant Sarah B. Rhodes in a proceeding of this kind offset against any amount remaining unpaid on her stock subscription moneys which she had advanced for or on behalf of the corporation or money due her from the

corporation? And (3) is a creditor of an insolvent corporation entitled to recover, for his own use and benefit, against a stockholder on the latter's unpaid subscription when there are other creditors of the insolvent corporation; or should said unpaid subscription be considered as a trust fund for the use and benefit of all the creditors of the corporation?

On July 17, 1933, plaintiff commenced this suit to recover on a promissory note for $1,000 made, executed and delivered by the defendant corporation on November 23, 1929, to the plaintiff, together with interest thereon at the rate of six per cent per annum from November 23, 1931, also $150 as attorney's fees, and costs. The complaint avers that at the time of the organization of the defendant corporation the defendant Sarah B. Rhodes subscribed for 36 shares of its capital stock of the par value of $100 per share, for which she agreed to pay the corporation on demand; and that said Sarah B. Rhodes has not paid for said stock or any part of it. It is further alleged that the defendant corporation is insolvent and has no property out of which plaintiff could satisfy a judgment for the amount due him.

The defendants filed a joint answer in which they admitted the incorporation of Western Realty Corporation, the subscription for stock by the defendant Sarah B. Rhodes, the making and execution of the note, and that the same had not been paid except interest thereon to November 23, 1931. They denied the other material allegations of the complaint.

By way of further answer and defense these defendants alleged that the defendant corporation was organized on December 26, 1928, at which time the defendant Rhodes subscribed for 36 shares of the capital stock of said corporation of the par value of $100 per share,

totaling $3,600; that during December, 1928, the defendant Rhodes, for the purpose of enabling the defendant corporation to raise money to carry out the objects for which it was organized, "loaned the defendant Western Realty Corporation her individual credit by signing one certain promissory note by the terms of which she obligated herself jointly and severally to pay the sum of $7,500, together with interest thereon at the rate of eight per cent per anum from the date thereof, until paid". As a consideration for her signing that note, it is alleged in the answer, the United States National Bank of McMinnville, Oregon, delivered to the corporation for its sole use and benefit, the sum of $7,500 in cash, and thereupon an entry was made in the defendant corporation's books listing said note among "bills payable" of said corporation. It is further alleged that thereafter the corporation from time to time paid the quarterly interest accruing on said note, as well as the sum of $4,500 on the principal.

On June 7, 1931, there was past due and unpaid on the principal of said note the sum of $3,000, and in order to obtain an extension of time "within which to permit the defendant corporation to pay said $3,000 obligation and to cancel the balance unpaid on the $7,500 note", the defendant Rhodes executed and delivered to the United States National Bank of McMinnville, Oregon, her promissory note in the principal sum of $3,000, dated June 7, 1931, and payable 90 days after date, with interest at eight per cent. Thereafter the corporation paid the accruing interest on said note to and including December 7, 1933, and as it failed to pay the balance the defendant Rhodes on April 17, 1933, paid to the bank the sum of $2,462.73 for the sole use and benefit of the defendant corporation,

which amount she was entitled, according to the answer, to have credited upon her stock subscription. Pursuant to a resolution of the board of directors of the defendant corporation at a meeting held July 13, 1933, the defendant Rhodes, according to the records of the corporation, was credited with that sum upon her stock subscription, leaving unpaid thereon the amount of $1,137.27.

The answer further alleges that on April 30, 1931, the defendant Rhodes in order to assist the defendant corporation in obtaining funds to carry on its business made a further loan of her credit to the corporation by executing and delivering to one Mattie Parker her promissory note in the sum of $1,000; that the $1,000 received on said note was turned over to the defendant corporation, was used by it and was recognized by the corporation as an indebtedness owing by it; that thereafter, on June 26, 1933, an action was instituted by said Mattie Parker against the defendant Rhodes on said note to recover the full amount thereof, together with interest, attorneys' fees, costs and disbursements; that said defendant Rhodes will be obligated to satisfy said demand in full out of her own personal property, which liability amounts to more than $1,250; and that said defendant Rhodes is entitled to have whatever amount she may be compelled to advance to satisfy said claim credited upon the balance owing by her on her stock subscription.

It is further alleged in the answer that for the purpose of enabling the corporation to raise money to carry on its business the defendant Rhodes further loaned to the corporation her individual credit, by endorsing a $2,000 note from the defendant corporation to one Clay Rowell, and thereupon the corporation received from

Mr. Rowell the sum of $2,000 in cash; that for some time the defendant corporation paid interest accruing on that note, but later defaulted in payment and an action was instituted by Clay Rowell against the corporation, Sarah B. Rhodes and other defendants for the sum of $2,000 with interest, attorneys' fees, costs and disbursements; that all the defendants defaulted and on May 26, 1933, judgment was entered against the defendants for the sum of $2,112, with interest at six per cent from May 22, 1933, and for $250 attorneys' fees and $33 costs; that said judgment is unsatisfied except for the credit thereon of $438.68 realized upon execution on the judgment; and that subsequent to the entry of said judgment a transcript thereof was obtained and filed in Polk and Tillamook counties. The defendants further aver that the defendant Rhodes ''is and will be compelled to satisfy said judgment lien or the greater part thereof and is entitled to be credited for such amount as a payment upon her stock subscription in the said defendant corporation''.

As a concluding allegation it is stated that after allowing the defendant Rhodes the credits hereinbefore mentioned as claimed by her, the records of the corporation will fully disclose that she has paid in full for her 36 shares of stock and that in reality the corporation is indebted to her.

The plaintiff in his reply denies, either generally or on information and belief, many of the allegations contained in the defendants' answer, but does admit the institution of the actions referred to in the answer, the entry of judgment in Yamhill county and the filing of a transcript of the judgment in the Rowell case, in Polk and Tillamook counties. As a further and separate reply he alleges that in order to secure the defendant

Rhodes in the payment of the $3,000 to the United States National Bank of McMinnville, Oregon, Paul Fundman, one of the makers of that note, had made, executed and delivered to the defendant Rhodes a mortgage on his one-half interest in 400 acres of land in Lincoln county, Oregon, which interest in said land was of the value of more than $3,000. The reply also alleges that the judgment recovered by Clay Rowell against the defendants and others has become a lien on all the real property owned by the defendant corporation, by the docketing of the judgment in Yamhill county and transcript thereof in the several counties in which the defendant corporation's real property is situated.

The defendant corporation was organized on December 26, 1928, with a capital stock of $10,000, consisting of 100 shares of the par value of $100 each. All of said stock was subscribed for as follows: Paul Fundman, 40 shares; E. Fundman, wife of Paul Fundman, 11 shares; James B. Ball, five shares; Mrs. L. J. Shetterly, seven and one-half shares; Sarah B. Rhodes, 36 shares; and H. E. Wooden, one-half share. Not any of the stock was paid for at that time except the one-half share subscribed by H. E. Wooden.

All the stockholders in the defendant corporation were also stockholders in the Willamina State Bank of Willamina, Oregon. Immediately prior to the organization of the defendant corporation the state superintendent of banks refused to allow that bank any longer to carry certain real property and contracts for purchase of real property as assets, and required the board of directors to replace the book value of said property with an equivalent in cash. The realty which the superintendent of banks ordered to be removed from the bank's list of assets consisted of certain tracts

of land in several counties of the state of Oregon, carried on the books of the bank in the sum of $4,729.59, and a contract to purchase certain land known as "the Rice place", on which had been paid the sum of $2,200.64. In order to restore the capital of the bank, all the stockholders of the defendant corporation, with the exception of H. E. Wooden, who had paid in full for his one-half share (such stockholders, five in number, to be referred to hereafter as "the stockholders"), on December 26, 1928, executed a note to the McMinnville National Bank, which later became the United States National Bank of McMinnville, in the sum of $7,500, payable on or before six months after date, with interest at eight per cent per annum, payable quarterly. The McMinnville National Bank upon receipt of the note gave credit to the Willamina State Bank in the sum of $6,930.23, the total book value of the above-mentioned tracts of land and contract to purchase, and delivered to or credited the defendant corporation with the sum of $569.77. At the time the $7,500 note was executed, there was an understanding that the makers thereof, stockholders of the defendant corporation, as among themselves should be liable for its payment only in proportion to their respective subscriptions for stock in the defendant corporation.

It was agreed between the stockholders of the defendant corporation and the Willamina State Bank that the assets which the superintendent of banks refused to allow the bank to carry longer as such were to be taken over by the defendant corporation at their book value. The transfers of the realty in Oregon were not actually made until November 20, 1931, and the record does not disclose when the contract of purchase of the Rice place was assigned.

The defendant corporation was not engaged in any active business. The principal object of its incorporation seems to have been to take over and dispose of the rejected assets of the Willamina State Bank. As alleged in the defendants' answer, the corporation paid interest on the $7,500 note and from time to time made payments on the principal thereof and renewal notes given for the unpaid balance. The last renewal note signed by the makers of the $7,500 note was for $3,000, dated June 7, 1931.

The $1,000 borrowed from the plaintiff in this case on November 23, 1929, was applied on the $7,500 note. On December 16, 1929, the defendant corporation received from Clay Rowell $2,000 in return for a note signed by it and endorsed by its stockholders; and on July 30, 1931, said corporation received $1,000 from Mattie Parker on the individual note of its stockholders. Both of these sums were applied on the indebtedness to the United States National Bank of McMinnville.

As time passed, there were borrowed by the corporation the following sums of money, to wit: from Fred C. Anderson, $2,000; from Mary R. Clark, $250; from Mrs. L. J. Shetterly, $500; from Paul Fundman, $600; and from Marie Resch, $1,000. All this money was used to apply on the principal and interest on the balance of the $7,500 indebtedness, as interest on the several notes herein mentioned or for taxes on the corporation's real property. None of the amounts so borrowed has been paid by the corporation, with the exception of the reduction of principal noted above and the claimed exception of the Fundman and Shetterly loans. The last $1,000 loan was later secured by the corporation's giving to Marie Resch a mortgage on real property at Willamina, the value of which property was estimated by witnesses as anywhere from $800 to $1,500.

On August 8, 1932, Paul Fundman and Elizabeth Fundman, his wife, gave to Sarah B. Rhodes a mortgage on an undivided one-half interest in land owned by them in Lincoln county, to secure the payment of the $3,000 note above mentioned. The interest of the Fundmans in this land had, according to the evidence, a value in excess of $3,000. At the time this mortgage was given, the bank was pressing Mrs. Rhodes and others for payment of the $3,000 note, and in order to obtain an extension of time for payment thereof, Mrs. Rhodes gave a mortgage to it on some of her property to secure the amount owing to the bank.

On April 17, 1933, Mrs. Shetterly paid to the United States National Bank of McMinnville on the $3,000 note the sum of $273.94, and on the same date Sarah B. Rhodes paid on that note $1,153.64, both of which payments were endorsed on the back of the note. On or about the same date the balance of $1,572.42 due on the principal, and interest in the sum of $86.67 were paid to the bank on the understanding that the bank was to assign to Mrs. Rhodes its claim to such unpaid balance and interest. These payments were not endorsed on the back of the note. The manager of the United States National Bank of McMinnville testified that the payments were made by Mrs. Rhodes or on her behalf. The defendants' pleadings, however, make claim for the sum of $1,309.09 only, as having been paid by Mrs. Rhodes, and this amount corresponds to the minutes of the directors' meeting of July 13, 1933. The remaining $350, according to the minutes, was paid by Mrs. Shetterly. Upon payment of the balance and interest the bank satisfied of record the mortgage theretofore given to it by Mrs. Rhodes.

Sometime prior to May 26, 1933, Clay Rowell instituted an action against the defendant corporation and its stockholders to recover on the $2,000 note given by the corporation to him and endorsed by said stockholders. All the defendants defaulted, and on May 26 judgment was entered in favor of the plaintiff and against the defendants for the sum of $2,112, with interest at six per cent from May 22, and the further sums of $250, attorneys' fees, and $33, costs. On July 3, 1933, the clerk of Yamhill county issued to the sheriff of that county a writ of execution directing the sheriff to satisfy the amount of said judgment out of the personal property of the defendant corporation, if sufficient, and if not, out of the real property belonging to said corporation. The writ of execution was received by the sheriff on the same date and there was realized on said execution the sum of $438.68 from personal property, with the writ returned unsatisfied as to the balance of said judgment.

Paul Fundman was president of the defendant corporation from the date of its organization until April 26, 1933, at which time Mrs. Rhodes succeeded him as such officer. On July 13, 1933, four days before the complaint in this suit was filed, there was a specially called meeting of the board of directors of the defendant corporation, at which all three of the directors, Mrs. Rhodes, Mrs. Shetterly and H. E. Wooden, were present, all having signed waiver of notice and having consented to such meeting. Apparently sensing the difficulties about to confront them, the directors attempted to give credit to a number of the stockholders for payment on the stock subscribed for by them. The minutes, which are indeed voluminous, refer to the different shareholders in the corporation

and the amount of stock subscribed by each. They mention also the $7,500 note to the United States National Bank of McMinnville; the payments thereon by the corporation; the fact that the amount due the bank was finally reduced to $3,000; that Mrs. Rhodes made on said note two payments, one of $1,153.64 and another of $1,309.09; that Mrs. Shetterly paid thereon the sum of $273.94 and a further sum of $350; that Mrs. Shetterly had already loaned the corporation $500, evidenced by the corporation's note to her; that the amount of said note together with the $273.94 paid to the bank fully paid for Mrs. Shetterly's stock, leaving the corporation owing her the sum of $23.94; and that the corporation should issue to her its note for the said $23.94, plus $350, or a total of $373.94, and secure the same by mortgage on certain property at Willamina. The minutes of the meeting also refer to the fact that Paul Fundman had loaned the corporation the sum of $600 and that the corporation had paid him as interest thereon $63, which amount, it was stated, should be deducted from the $600 loan, and the balance of $537 should be credited on his stock subscription. Following these recitals there is recorded a motion made and adopted that the books of the corporation be made to show those several payments on the subscriptions of the respective stockholders: Mrs. Rhodes, Mrs. Shetterly and Paul Fundman.

Before this suit was started Paul Fundman and Elizabeth Fundman, his wife, had filed voluntary petitions in bankruptcy and had been adjudged bankrupt. James B. Ball had died, leaving no assets. And it was understood among the remaining stockholders, with the possible exception of Wooden, that the five shares subscribed for by Ball should be paid for by the remain-

ing stockholders in proportion to the stock owned by them.

It was stipulated at the trial that the contract for the purchase of the Rice place was of no value to the defendant corporation and that there would be no liability against the corporation on the contract.

■ One of the first questions to be determined is whether or not the defendant corporation was insolvent at the time this suit was instituted. If it was not then insolvent, it follows that the plaintiff would have no right to maintain this suit against the defendant Rhodes as a stockholder. On the other hand, if the Western Realty Corporation was in fact then insolvent, it was unnecessary for the plaintiff to reduce his claim to judgment against the corporation and have execution thereon returned unsatisfied as a preliminary to maintaining this suit against Mrs. Rhodes as a stockholder of such corporation on her unpaid subscription: *Shipman v. Portland Construction Co.,* 64 Or. 1 (128 P. 989); *Security Savings & Trust Co. v. Portland Flour Mills Co.,* 124 Or. 276 (261 P. 432); *Smith v. Schmitt,* 112 Or. 687 (231 P. 176).

We shall now consider the assets of the defendant corporation at the time this suit was instituted. The only personal property which it had was $58 in the bank and its interest in the Rice contract, which had a book value of $2,200 at the time the corporation was organized but no value at the time this suit was filed. One lot which the defendant corporation owned at Willamina and which was estimated to have a value of from $800 to $1,500 was mortgaged to Marie Resch to secure a $1,000 note owing to her. The corporation's other property at Willamina, which had an estimated value of $500, had been sold to Mrs. Shetterly. The corpora-

tion owned some land in Stevens county, Washington, which had been sold on a contract with a balance of $550 unpaid thereon and the purchaser thereof was more than a year in default. The record is not clear as to how the defendant corporation acquired this Washington property, but apparently it was a part of the realty transferred to it by the Willamina State Bank. In addition thereto, the company also owned 560 acres of land, all of which, with the exception of 120 acres, was logged-off timber land. The 440 acres of logged-off land had a value of not over $2,500. There is some dispute as to the value of the remaining 120 acres, one witness testifying that the tract was not worth over $2,000, due to the fact that a great deal of timber had been logged. Another witness testified, in answer to a hypothetical question as to the amount of timber which had been removed, that it had a value of around $5,000 to some one who wanted that kind of timber, but that at a forced sale not over $2,000 could be realized on this property. Taxes on all the real property were at least two years, and in some instances three years, delinquent. The amount thereof was over $500. The only income which the defendant corporation had was something like $11 a month for the rental of the property at Willamina which had been mortgaged to Marie Resch.

Against the real property of the defendant corporation except that in the state of Washington were the $1,000 Resch mortgage on the lot at Willamina and the lien of the judgment which had been recovered by Rowell against the corporation and its stockholders, amounting to approximately $2,000, after deducting the $438.68 realized on execution. From the evidence, the highest value which can well be placed on all the property of the corporation, after deducting taxes, is in

the neighborhood of $6,000, if the property be not disposed of at forced sale.

Suit has already been instituted to foreclose the Resch mortgage, and it is quite improbable that the Willamina lot, even at a valuation of $1,500, would be more than sufficient to satisfy the amount of the mortgage, attorneys' fees and costs. The remainder of the real estate of the corporation in Oregon, of the estimated value of $4,000, with the Rowell judgment against it, would probably not sell for any more than enough to satisfy that judgment.

We have, in addition to those two items of indebtedness, to wit, the Resch mortgage and the Rowell judgment, the loan of Fred C. Anderson in the sum of $2,000, that of Mary R. Clark for $237 to $250, so much of the $3,086.67 paid by Mrs. Shetterly and Mrs. Rhodes to the United States National Bank of McMinnville for and on behalf of the defendant corporation as they may be entitled to assert, the Mattie Parker note of $1,000 and interest, given by the stockholders for the benefit of the corporation, the amount of $600 each due to Mrs. Shetterly and Paul Fundman, in the event that the indebtedness to these two last-mentioned creditors has not otherwise been satisfied, and the plaintiff's claim for $1,000 principal, with interest, attorney's fees and costs.

The lien of the Rowell judgment was entered before this suit was instituted and the owner thereof has, therefore, a lien on all the real property of the defendant corporation in Oregon, prior to any lien which can be acquired by plaintiff and the other unsecured creditors. Since Mrs. Rhodes endorsed the note on which the Rowell judgment is based, and the money from the note was received by the corporation, she would, upon the

payment of the said judgment, be entitled to be subrogated to the rights of the judgment creditor against the property of the defendant corporation. Although not a part of the record, it is stated in the respondent's brief that after the entry of the decree in this case, Sarah B. Rhodes has paid the Rowell judgment and holds an assignment of the same.

It is apparent that with the corporation inactive and its only function that of holding certain real property which was rejected as part of the Willamina State Bank's assets, until it could be sold by the defendant corporation, very little, if any, assets would remain for the satisfaction of the unsecured creditors after payment of the taxes and liens against the corporation's real property. With due consideration of the condition in which it existed at the time this suit was started, the defendant corporation then was, in our opinion, insolvent. At the time this suit was commenced it had acquiesced in the entry of the Rowell judgment in order to enable Mrs. Rhodes to obtain a lien on the corporation's realty for any amount she had to pay.

In their answer the defendants deny in a general way that the defendant corporation was insolvent at the time this suit was started. They allege, however, that Mrs. Rhodes will be compelled to pay out of her own resources the Parker note and the Rowell judgment, thus, inferentially at least, admitting that the property of the defendant corporation is insufficient to pay those obligations. The Rowell judgment, as already pointed out, is against the defendant corporation; and there can be little doubt, from the record, that the corporation is legally bound to repay to the makers of the Parker note whatever amount they are forced to pay.

The principal business of the corporation seems to have been to borrow funds to pay money already owing by it, and so on, *ad infinitum*. With no income of its own and no means of paying its indebtedness except with borrowed funds, the original obligation of $7,500 was, at the time of the institution of this suit, augmented some $2,500 to $2,700 by the accumulation of interest alone. In addition thereto there were taxes due on realty standing in the corporation's name.

The question of when a corporation is insolvent was ably and thoroughly discussed in the case of *Gantenbein v. Bowles,* 103 Or. 277 (203 P. 614), and it is not necessary for this court again to review the law on that point.

■ Since we have concluded that the Western Realty Corporation was insolvent on July 17, 1933, the date this suit was instituted, we shall now consider plaintiff's remedy against one or more of such stockholders of that corporation as have not paid for their stock. Beginning with the case of *Ladd & Bush v. Cartwright,* 7 Or. 329, followed by *Hodges & Wilson v. Silver Hill Mining Company,* 9 Or. 200, and *Brundage v. Monumental, etc., Mining Co.,* 12 Or. 322 (7 P. 314), through a long line of cases, including the more recent one of *Crocker v. Gentry,* 127 Or. 168 (271 P. 38), this court has steadily adhered to the doctrine that the remedy of such creditor is by way of a suit in equity, in which all persons interested in the matter, however numerous, may be made parties, and "all the relative and conflicting claims of the many creditors and stockholders settled, and their proportionate rights to recover and liabilities to contribute adjusted in a single suit". An action at law can not be maintained in this state by a creditor of the corporation against its stockholders to recover on their unpaid subscriptions. See authorities last above cited.

■ This proceeding was started as a suit in equity and was so treated by the court and the parties litigant. When it developed during the trial of the case that the defendant corporation was insolvent and that there were other creditors, those creditors should have been brought in by proper proceedings. The court was also at liberty, either on its own motion or at the instance of creditors or other stockholders, to have those stockholders brought in who had not paid their stock subscriptions.

■ The rule has been adopted in this state that the assets of an insolvent corporation constitute a trust fund for the benefit of all its creditors and stockholders. See authorities last above cited and *Gantenbein v. Bowles,* supra. Many of the states, however, under the peculiar wording of their statutes, have held that any creditor may maintain an action at law against one or more stockholders on unpaid subscriptions or upon any statutory superadded liability of the shareholders. Examples illustrative of this latter holding are the following cases cited by the respondent Rhodes: *Fidelity Insurance, etc., Co. v. Mechanics' Savings Bank,* 97 Fed. 297 (56 L. R. A. 228); *Crocker v. Ball,* 10 Kan. App. 364 (59 P. 691); *Musgrave v. Glen Elder, etc., Ass'n,* 5 Kan. App. 393 (49 P. 338); *Jerman v. Benton,* 79 Mo. 148; also the other Kansas and Missouri cases cited by the respondent. In such cases the stockholder was permitted to offset against the creditors' claims any amount due him from the corporation.

■ In 14 C. J. 1044, § 1628, we find this statement: "While the contrary view is maintained in some jurisdictions, the weight of authority is to the effect that a stockholder who is indebted to an insolvent corporation for unpaid shares can not set off against the amount so

due a debt due him by the corporation, unless as is the case in some jurisdictions, the rule has been changed by statute.'' The text is supported by a lengthy list of cases in the appended footnote. In the notes in 40 A. L. R. 1177 to the case of *Reimers v. Larson,* 52 N. D. 297 (202 N. W. 653), the annotator distinguishes between those cases based upon statutes allowing the creditor a right of action against individual stockholders and those in which the assets of the insolvent corporation are treated as a trust fund. It is pointed out that in the latter instances ''no set-off will be allowed, since to do so would give a stockholder creditor a preference over other creditors, and thus defeat the ends of the statute''.

The right of a stockholder to offset or counter-claim against the amount due on his subscription an indebtedness owing him by the corporation is discussed at some length in *Butterworth v. Smith,* 240 Mass. 192 (133 N. E. 100), where the court observed:

''The right of a stockholder of a corporation, in direct proceedings to collect an assessment for balances unpaid upon the capital stock for the benefit of all its creditors, to interpose as a defense in whole or in part an unpaid indebtedness of the corporation to him, has frequently been considered. It is well settled in this and many other jurisdictions that no such right exists either in set-off or in recoupment apart from statute. Stone v. Old Colony Street Railway, *supra,* and cases collected in Everett v. Foster, at pages 555 and 556 of 223 Mass., at page 240 of 112 N. E. See Ann. Cas. 1913 E, 1025.

'' 'The creditor must pay for his shares in full and is entitled only to a ratable distribution of all the company's assets and to receive a dividend upon his claim against the corporation in common with other creditors.' Everett v. Foster, *supra,* at page 555 of 223 Mass., at page 240 of 112 N. E.

"The reason for this is well stated in Stone v. Old Colony Street Railway, *supra,* at page 466 of 212 Mass., at page 221 of 99 N. E.:

"' * * * The assessments when collected from [form] a fund for the benefit of all [stockholders] including the defendant whose demands comprise a part of the indebtedness which made the assessment necessary. * * *. A set-off would confer upon [a stockholder] a preference to the disadvantage of other creditors and [stockholders], and permit [him] to appropriate exclusively the amount claimed in partial payment of its own demands, * * * and to this extent the defendant would be relieved from [his] obligations. * * * It is because of this principle of equality where an insolvent corporation of this character is being wound up for the purpose of a proportional distribution of assets, that the right of a member who is also a creditor to set off or recoup his individual loss uniformly has been denied.' "

A dissertation on this matter is contained also in the case of *Lauraglenn Mills v. Ruff,* 57 S. C. 53 (35 S. E. 387, 49 L. R. A. 448), cited and relied upon by the respondent Rhodes. That case, however, does not support her contention, but on the contrary holds that a stockholder of an insolvent corporation is not entitled to set off against his liability as such a claim against the corporation.

6. The respondent places reliance on the action of the board of directors of the defendant corporation, hereinbefore referred to, ordering that she be given credit on her stock subscription for certain amounts mentioned. This action of the board of directors was a nullity. It occurred at a time when the corporation was insolvent and two of the three directors were personally and vitally interested in the action attempted to be taken by the board: *Rugger v. Mt. Hood Electric Co.,* 143 Or. 193 (20 P. (2d) 412, 21 P. (2d) 1100).

■ Inasmuch as this case is to be remanded for further proceedings, it is well to observe that the respondent Rhodes contended in the circuit court, and is insisting here, that she is entitled to a credit of $2,462.73, the total of amounts alleged to have been paid by her to the United States National Bank of McMinnville on the $3,000 note. As against the amounts so paid, however, she holds the Fundman mortgage of $3,000, on which, according to the record, the Fundmans are liable for at least 51 per cent, or $1,530. And if this mortgage is also intended to cover the Fundmans' proportionate share of the stock subscribed for by James B. Ball, deceased, and the seven and one-half shares of Mrs. Shetterly, as the record would seem to indicate, the amount which would be realized therefrom would exceed $1,530. Moreover, at the time of the trial the original $3,000 note was introduced in evidence, and counsel for Mrs. Rhodes requested that a copy be substituted therefor, for the reason that the note belonged to Mrs. Rhodes and was "worth $1,600". As another payment and offset against her subscription Mrs. Rhodes claims the amount of the Rowell judgment, which, according to her admission in the brief, is now owned by her and is a lien on the real estate of the defendant corporation in Oregon.

The claim of Mrs. Rhodes that she either is or will be out of pocket in excess of $5,700 for having signed the United States National Bank of McMinnville note, the Minnie Parker note and the Rowell note, is an absurdity, in view of her present ownership of the note to the bank, secured by the Fundman mortgage, and her ownership of the Rowell judgment with accompanying lien.

In further proceedings between these litigants Mrs. Rhodes is to be treated as any other creditor of the corporation, with reference to any money due from it to her. She is of course not entitled to her claim for $2,462.73 in addition to such benefit as may accrue to her under the Fundman mortgage. In other words, the amount which she is entitled to assert against the defendant corporation is the difference between the $2,462.73 that she paid to the bank and whatever sum may be realized on this mortgage. Likewise she is not entitled to a credit for paying off the Rowell judgment while claiming the benefit of the lien of that judgment.

So much of the decree as is appealed from is reversed and the suit is remanded for further proceedings in accordance with this opinion. On such further trial, it may be deemed advisable to amend the pleadings and to make parties to the proceeding all creditors of the Western Realty Corporation and all other stockholders of that corporation. The rights of all the parties are to be considered and determined on such further trial. As the plaintiff brought this suit in the nature of a creditor's bill at a time when the corporation was insolvent, he is not entitled to any preference, by virtue of the decree hereinbefore entered in this case, as against unsecured creditors of Western Realty Corporation.

ROSSMAN, J., not sitting.